# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-0953

ROBERT H. ARNESON, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 25, 2011                                   Decided April 20, 2011)

*Glenn R. Bergmann* and *Thomas Polseno,* both of Bethesda, Maryland, for the appellant.

*Ronen Morris,* with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Carolyn F. Washington*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and LANCE and SCHOELEN, *Judges*.

SCHOELEN, *Judge*, filed the opinion of the Court. KASOLD, *Chief Judge*, filed an opinion concurring in the result.

SCHOELEN, *Judge*: Veteran Robert H. Arneson appeals through counsel a November 20, 2008, Board of Veterans' Appeals (Board) decision that denied service connection for bilateral plantar fasciitis and a bilateral knee disorder, both on a direct basis and as secondary to service-connected bilateral pes planus. Record of Proceedings (R.) at 3-19. Because the Court finds that the Board erred by failing to afford Mr. Arneson the opportunity for a personal hearing before all members of the Board panel that ultimately decided his case, the Court will vacate the Board's decision and remand the vacated matter for further proceedings consistent with this opinion.

# I. BACKGROUND

Mr. Arneson served on active duty in the U.S. Navy from March 1970 to October 1971. R. at 471-72. He initially applied for benefits for foot and knee conditions in February 2005. R. at 248. His claims relating to bilateral pes planus, bilateral plantar fasciitis, and a bilateral knee disorder were denied in a September 2005 regional office (RO) rating decision (R. at 247-52), a February 2006 Statement of the Case (SOC) (R. at 207-23), and a June 2006 Supplemental SOC (R. at 178-82). Mr. Arneson appealed to the Board and requested a hearing. R. at 205-06. In September 2006, Board member Sabulsky conducted an in-person hearing, at which Mr. Arneson and his sister testified. R. at 136-46. In an October 2007 decision, Board member Sabulsky remanded Mr. Arneson's claims to obtain a medical opinion on the etiology of his conditions. R. at 98-102.

In January 2008, the RO granted service connection for bilateral pes planus, evaluated as 10% disabling, but denied service connection for bilateral plantar fasciitis and a bilateral knee disorder. R. at 47-52. On June 17, 2008, Mr. Arneson testified at another Board hearing, this time appearing via video before Board member Herman. R. at 30-40. The record on appeal – and, according to the parties, the record before the agency – does not indicate whether this hearing was requested by Mr. Arneson or why Board member Sabulsky was not present.

In October 2008, without notice to Mr. Arneson, the Chairman of the Board assigned a panel to decide his appeal. On November 20, 2008, the panel, consisting of Board members Sabulsky, Herman, and Sullivan, denied the appellant's claims for entitlement to service connection for bilateral plantar fasciitis and a bilateral knee disorder, both under direct service connection and as secondary to his service-connected pes planus. R. at 3-19. Although the Board found Mr. Arneson's and his sister's hearing testimony "credible," the Board noted a 30-year lapse in time between service and the first treatment for Mr. Arneson's conditions, and ultimately gave greater weight to the medical opinions that found no nexus between his present disabilities and service or his service-connected pes planus. R. at 16-18.

# II. THE PARTIES' ARGUMENTS

The novel question before the Court is whether a claimant is entitled to the opportunity for a personal hearing in front of all Board members that ultimately decide his appeal. Mr. Arneson

asserts that the Board violated statute, regulation, and his right to fair process by not affording him the opportunity for a personal hearing in front of all three Board members that would ultimately decide his appeal. First, he argues that he has a statutory right to a hearing before a Board member or all members of a Board panel, depending on whether his appeal is assigned to a single Board member or a panel. Appellant's Brief (Br.) at 9-13. Second, he contends that VA regulations compel the entire Board panel that is assigned to an appeal to conduct the hearing. *Id*.; Reply at 1-2. Third, he argues that fair process entitles him to a hearing in front of all the decisionmakers on his appeal. *Id*. He asserts prejudice because a personal hearing before Board member Sullivan could have swayed the Board's determination regarding the credibility of his continuity-of-symptoms argument. Appellant's Br. at 10-12.

At oral argument, the Secretary argued that no statute, regulation, or notion of fair process requires all members of a Board panel to conduct a Board hearing. He first noted that 38 U.S.C. § 7107(c) grants the Board Chairman the discretion to assign Board members to conduct a hearing. Second, he argued that an appellant would only be entitled to a hearing before every member of a Board panel if a panel was assigned to adjudicate his appeal before a hearing was held. Since his appeal was initially assigned to only Board member Sabulsky, the Secretary stated that it was proper for only Board member Sabulsky to hold the hearing. The Secretary explained that the Chairman assigned a three-member panel to decide Mr. Arneson's appeal because two Board members had conducted two separate hearings; both Board members were required by statute to participate in the final determination; and two-person panels are prohibited by law. Third, referencing *Del Rosario v. Peake*, 22 Vet.App. 399, 406 (2009), he argued that fair process is not implicated because there is no inherent advantage in live testimony in front of a Board member. Finally, the Secretary argued that Mr. Arneson suffered no prejudice, because (1) Board members Sabulsky and Herman already held hearings on Mr. Arneson's claim and only a majority is required for a binding decision, and (2) the Board already found Mr. Arneson's testimony concerning his continuity of symptoms "credible."

Mr. Arneson also argues that the Board erred in (1) finding the duty to assist satisfied despite the absence of entrance and discharge medical reports from his service medical records; (2) finding that a June 2008 private medical opinion lacked probative value; (3) providing an inadequate statement of reasons or bases for denying his claim; and (4) failing to address the reasonably raised

3

issue of service connection for Mr. Arneson's hallux valgus disability. Appellant's Br. at 13-21; Reply at 3-6. The Secretary refutes the first three arguments, but concedes that remand is warranted to enable the Board to consider the appellant's reasonably raised issue of entitlement to service connection for hallux valgus. Secretary's Br. at 4-16.

### III. DISCUSSION

#### A. Purpose and Importance of the Board Hearing

Before the Board renders a decision in the veterans claims adjudication process, the claimant must be afforded an opportunity for a Board hearing. 38 U.S.C. § 7107(b) ("The Board shall decide any appeal only after affording the appellant an opportunity for a hearing."). The purpose of VA hearings is "to permit the claimant to introduce into the record, *in person*," pertinent evidence and arguments with respect to his claim, and testimony from the claimant or witnesses under oath or affirmation. 38 C.F.R. § 3.103(c)(2) (2010) (emphasis in original); 38 C.F.R. § 20.700(a) (2010) ("A [Board] hearing on appeal will be granted if an appellant . . . expresses a desire to appear in person."). Although the Board hears only cases on administrative appeal, it reviews matters de novo and "functions as a factfinder in a manner similar to that of a trial court." *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990); *see McBurney v. Shinseki*, 23 Vet.App. 136, 139 (2009) ("[T]he Board, as the final trier of fact, is not constrained by . . . determinations below."). Unlike a traditional judicial appeal where review is of the record, the opportunity for a personal hearing before the Board is significant because it is the veteran's one opportunity to personally address those who will find facts, make credibility determinations, and ultimately render the final Agency decision on his claim. *See McDowell v. Shinseki*, 23 Vet.App. 207, 214 (2009) (noting "this Court's caselaw that has long held that the Board has a duty to find facts and assess the weight and credibility of the evidence"). Our caselaw has acknowledged the importance of a hearing, and the sworn testimony rendered during it, by holding that the Board "must consider" and "provide adequate reasons or bases for its rejection" of any sworn testimony. *Ashley v. Brown*, 6 Vet.App. 52, 56 (1993); *see Clyburn v. West*, 12 Vet.App. 296, 300 (1999).

The significance placed on a veteran's sworn testimony is further demonstrated by the standard under which the Court reviews the Board's assessment of a witness's credibility. Such

4

credibility determinations are factual findings that the Court reviews under the "clearly erroneous" standard. 38 U.S.C. § 7261(a)(4) (authorizing Court to set aside or reverse the Board's factual findings only if they are found to be "clearly erroneous"); *see Gilbert*, 1 Vet.App. at 52 ("'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))). It is well established that "the assessment of the credibility of the veteran's sworn testimony is a function for the [Board] in the first instance and [] it is not for this Court to find . . . that that sworn testimony . . . is credible." *Jones v. Derwinski*, 1 Vet.App. 210, 217 (1991); *see Smith v. Derwinski*, 1 Vet.App. 235, 237-38 (1991) (stating that "[c]redibility is determined by the fact finder" and that "the Court cannot determine the credibility of a veteran's sworn testimony"). One obvious reason the Court defers to the Board's assessment of a witness's credibility is that the Board has had the opportunity to observe the witness firsthand, whereas the Court has not. *See Leatherbury v. Dep't of Army*, 524 F.3d 1293, 1304 (Fed. Cir. 2008) ("This requirement to defer to the [administrative judge's] credibility findings spring[s] from a fundamental notion of fairness . . . [that] great deference must be granted to the trier of fact who has had the opportunity to observe the demeanor of the witnesses, whereas the reviewing body looks only at cold records.") internal quotations omitted)); *Haebe v. Dep't of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) ("[T]he deference requirement . . . is fundamentally related to the observation of witness[] demeanor.").

## B. 38 U.S.C. §§ 7102, 7107

Before analyzing the pertinent statutes regarding Board hearings, we first acknowledge that *Arnesen v. Brown*,[1] provides controlling precedent on the pre-1994 version of section 7102. 8 Vet.App. 432, 441 (1995) (addressing 38 U.S.C. § 7102(b) (1993)). Before substantive amendments were enacted in 1994, decisions of the Board could only be rendered by "sections of three members," and hearings could be held by "such member or members as the Chairman may designate." 38 U.S.C. § 7102 (1993). The Court's 1995 decision in *Arnesen* held that section 7102(b) "at that time" authorized hearings to be held by one Board member even though a section

---

[1] Tore Arnesen, party to *Arnesen v. Brown*, is not related to the appellant in the present matter, and *Arnesen v. Brown* is not otherwise connected to *Arneson v. Shinseki*, the case we consider here.

of three members would subsequently decide the claim. 8 Vet.App. at 441. While we do not dispute that *Arnesen*'s holding was correct for the statutory scheme in effect in January 1993, when Tore Arnesen had his Board hearing, Congress has since altered section 7102, added section 7107, and sufficiently changed the statutory scheme such that *Arnesen* is not a controlling interpretation of the post-1994 statutory scheme regarding hearings. Board of Veterans' Appeals Administrative Procedures Improvement Act of 1994, Pub. L. No. 103-271, 1994 U.S.C.C.A.N. 810 (1994).

Both parties argue that the pertinent statutes support their positions. The Court reviews VA's interpretation of statutes and regulations de novo. *See Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003) ("[I]nterpretation of a statute or regulation is a question of law . . . ."); *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (stating that the Court reviews "questions of law de novo without any deference to the [Board's] conclusions of law"). "'Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure.'" *Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) (quoting *McEntree v. MSPB*, 404 F.3d 1320, 1328 (Fed. Cir. 2005)). Statutory terms are interpreted "in their context and with a view to their place in the overall statutory scheme." *Tyler v. Cain*, 533 U.S. 656, 662 (2001) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). In reviewing "an agency's construction of the statute which it administers," a court must first ask "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Counsel, Inc.*, 467 U.S. 837, 842 (1984). If so, the court and the agency must "give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43.

Before the 1994 amendments, the same statutory section that required all Board decisions to be rendered by three-member panels also provided that "formal recorded hearings shall be held by such member or members as the Chairman may designate, the member or members being of the section which will make final determination in the claim." 38 U.S.C. §§ 7102(a)(1), (b) (1993).

The 1994 statutory amendments restructured this section and separated the provision regarding the assignment of Board members from the provision regarding hearings. Under the new statutory scheme, section 7102 governs the assignment of cases, and permits a single Board member *or* a panel to render a Board decision. *See* 38 U.S.C. § 7102(a) ("A proceeding instituted before the Board may be assigned to an individual member of the Board or to a panel of not less than three

members of the Board."). Section 7107 governs Board hearings. Subsection (b) provides that the "Board shall decide any appeal only after affording the appellant an opportunity for a hearing." 38 U.S.C. § 7107(b). Subsection (c) states that "hearings shall be held by such member or members of the Board as the Chairman may designate," and that "[s]uch member or members designated by the Chairman to conduct the hearing shall . . . participate in making the final determination of the claim." 38 U.S.C. § 7107(c).

At oral argument, the Secretary argued that the statute interpreted in *Arnesen* remains in the statutory scheme, now at section 7107(c), and still authorizes the Board Chairman to designate hearing members. He is correct. However, he fails to consider this statutory provision's setting within the new scheme created by Congress, including the import of section 7102(a) and its interaction with all of section 7107. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("[T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand."); *United States v. Fausto*, 484 U.S. 439, 453 (1988) ("Th[e] classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute."). The pre-1994 statutory scheme required all Board decisions to be rendered by three-member panels and hearings to be held by "the member or members . . . *of the section* which will make final determination in the claim." 38 U.S.C. § 7102(b) (1993) (emphasis added). The only requirement regarding who conducts a hearing was that at least one member "of the section" that would render the final decision must participate in the hearing. The pre-1994 statutory language, therefore, clearly allowed a single Board member to conduct a hearing in a case that was to be decided by a three-member panel on which such member served.

The post-1994 language is not as clear. As noted above, section 7102(a) now allows an appeal to "be assigned to an *individual member* of the Board *or* to a *panel* of not less than three members of the Board." 38 U.S.C. § 7102(a) (emphasis added). The language regarding hearings in section 7107, however, states that "hearings shall be held by such member or members of the Board as the Chairman may designate. Such member or members designated by the Chairman to conduct the hearing shall . . . participate in making the final determination of the claim." 38 U.S.C.

§ 7107(c).  Obviously, if a case is assigned to be adjudicated by an individual member of the Board, that member must conduct the hearing.  However, it is not clear whether the amended statutory language allows for *any* individual member of a panel to conduct a hearing on behalf of that panel or whether the language requires *all members* of a panel to participate in a hearing.  Based on the lack of specificity in the post-1994 language and the differences between the pre-1994 and post-1994 statutory schemes, the Court is not persuaded by the Secretary's argument that the Court's earlier interpretation of section 7102 in *Arnesen* is applicable to the post-1994 statutory scheme.

Because the post-1994 statutory language does not clearly state that a final Board decision can *only* be rendered by the member or members who conducted the hearing, it cannot be said that "Congress has directly spoken" to the question of whether a claimant is entitled to a hearing before all the Board members assigned to decide his appeal.  *Chevron*, 467 U.S. at 842.  "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  *Id*. at 843.  "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."  *Id*. at 844-45.  Accordingly, we turn to the agency's implementing regulation to demonstrate VA's interpretation of the statutes pertaining to Board hearings.

### C. 38 C.F.R. § 20.707

The Secretary has promulgated 38 C.F.R. § 20.707 to implement the pertinent statutes on Board hearings.  This regulation states that "[t]he Member or panel to whom a proceeding is assigned . . . shall conduct any hearing before the Board in connection with that proceeding . . . .  The Member or Members who conduct the hearing shall participate in making the final determination of the claim."  38 C.F.R. § 20.707 (2010).

At oral argument, the Secretary stated that it has been the Agency's practice to assign Board members to cases in piecemeal fashion, such that some are appointed after a hearing has been held.  Based on this practice, the Secretary argues that only the Board member or members who are assigned to the appeal *at the time of the hearing* are required to conduct the hearing.  Courts tend to accept an agency's interpretation of its own regulation unless it is "'plainly erroneous or inconsistent with the regulation.'"  *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (quoting *Robertson v. Methow*

8

*Valley Citizens Council*, 490 U.S. 332, 359 (1989)). The Court cannot accept the Secretary's interpretation here.

As an initial matter, it is well established "that the unchallenged historical practice of the Secretary is not evidence that the practice is correct." *Tropf v. Nicholson*, 20 Vet.App. 317, 321 n.1 (2006) (citing *Brown v. Gardner*, 513 U.S. 115, 122 (1994)). The fact that the Chairman may assign Board members to a panel in piecemeal fashion cannot serve as a basis for the Secretary's interpretation of his own regulation, especially when that practice seems so clearly at odds with the regulatory language. The Secretary's interpretation suggests that a veteran has a right to a hearing in front of *all* the Board members adjudicating his appeal *only* if his case is assigned to a panel from the *start* of the adjudication; whereas a veteran whose appeal is assigned to a panel on an ad hoc basis, as apparently occurred in the present case, has no such right.

This interpretation makes no sense. The regulation does not state that Board members assigned to an appeal shall conduct a hearing *if that hearing happens to be scheduled subsequent to their assignment*. Nor does it state that a single member of a panel can conduct a hearing where a case has been assigned to be decided by a panel. Instead, the regulation states that the Board "Member or panel" assigned to an appeal "*shall* conduct *any hearing* before the Board in connection with that [appeal]." 38 C.F.R. § 20.707 (emphasis added). The plain language of § 20.707 does not in any way indicate that the timing of Board member assignments dictates the scope of one's right to a hearing in front of those adjudicating one's appeal. The notion that Congress would predicate a veteran's right to a hearing in front of those adjudicating his appeal upon a factor as arbitrary as the timing of the Chairman's assignment of Board members is odd, at best. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69-70 (1994) (assuming that Congress did not intend a statute to create odd or absurd results); *Gardner v. Derwinski*, 1 Vet.App. 584, 587 (1991) (noting that the "'absurd result' exception to the plain meaning rule is, however, narrow and limited to situations 'where it is quite impossible that Congress could have intended the result . . . and where the alleged absurdity is so clear as to be obvious to most anyone'" (quoting *Pub. Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 470-71 (1989) (Kennedy, J., concurring))).

Accordingly, we hold that the pertinent statutes and implementing regulation regarding Board hearings entitle a claimant to an opportunity for a hearing before all the Board members who will

ultimately decide his appeal. If the claimant's appeal is assigned to a Board panel in a piecemeal fashion, that claimant must still be afforded the opportunity for a hearing before every member of the panel that will ultimately decide his case. This is not to say that the claimant must be afforded a hearing before every panel member *at the same time*; only that he be afforded the opportunity to be heard – be it in-person, telephonically, or via video conference – by every panel member who will decide his case.

## D. Application of Law

Here, the Board assigned Board member Sullivan to adjudicate Mr. Arneson's appeal without affording Mr. Arneson the opportunity to be heard before Board member Sullivan. In accordance with the aforementioned discussion, we hold that the Board violated 38 U.S.C. §§ 7102, 7107, and 38 C.F.R. § 20.707.

## E. Fair Process and Prejudice

In light of our holding, we need not decide whether fair process provides a right to a hearing before all members of a Board panel that are assigned to adjudicate an appeal. *See Bucklinger v. Brown*, 5 Vet.App. 435, 441 (1993) ("It is '[a] fundamental and long-standing principle of judicial restraint . . . that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'"). However, this Court is required to "take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b)(2); *see Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009) (appellant bears burden of demonstrating prejudice on appeal); *Marciniak v. Brown*, 10 Vet.App. 198, 201 (1997) (remand unnecessary in "the absence of demonstrated prejudice"). Accordingly, we must consider Mr. Arneson's arguments that he was prejudiced by the Board's failure to afford him the opportunity for a hearing before every Board member who decided his case.

Mr. Arneson argues that he was prejudiced because a hearing before Board member Sullivan could have altered the Board's determination on his continuity-of-symptoms argument and, therefore, the outcome of his claim. The Secretary asserts that an additional hearing is unwarranted because (1) Board members Sabulsky and Herman already held hearings and only a majority is needed for a binding decision under 38 C.F.R. § 19.7, and (2) the Board already found Mr. Arneson's testimony concerning the continuity of his symptoms credible. We find Mr. Arneson's argument more persuasive for several reasons.

10

This Court has held that "[t]he entire thrust of VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process." *Thurber v. Brown*, 5 Vet.App. 119, 123 (1993). Here, Mr. Arneson was never notified that an additional factfinder had been assigned to adjudicate his appeal, and never given the opportunity provided by statute and regulation to have a hearing before that decisionmaker. If nothing else, the hearing and remand by Board member Sabulsky, followed by a hearing by Board member Herman, followed by the addition of Board member Sullivan and the rendering of a panel decision, without any notice or opportunity to be heard by the third member of the panel, gives an appearance of forum shopping, regardless of the good-faith basis for assigning the panel.[2] In the claimant-friendly world of veterans benefits, "the importance of systemic fairness and the appearance of fairness carries great weight." *Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998).

However, the perception of unfairness is not the only issue here. As Mr. Arneson argues, the piecemeal assignment of Board members to a panel post-hearing – such that Board members are assessing credibility based on a second-hand conveyance or a review of a transcript – undermines the claimant's ability to personally impress his credibility upon his factfinders. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) (noting that "variations in demeanor and tone of voice" bear heavily on a judge's credibility assessment); *Caluza v. Brown*, 7 Vet.App. 498, 511 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table) ("[C]redibility is often defined as determined by the demeanor of the witness . . . .").

Furthermore, the right to a hearing as a conduit for conveying one's credibility could be rendered meaningless if the credibility determinations of one Board member who attended the hearing were overruled by two Board members who did not attend that hearing. *See* 38 C.F.R. § 19.7(c) (2010) ("A decision by a panel of Members will be by a majority vote of the panel Members."). Although the Secretary invokes *Del Rosario*, *supra*, for the proposition that there is no inherent advantage in live testimony, the *level of advantage* is not the issue; rather, the issue is Mr. Arneson's *right* to be afforded the opportunity to be heard by those assigned to adjudicate his

---

[2] We in no way impugn the integrity of the Board Chairman and fully accept and understand that a panel was assigned to comport with the law that two Board members cannot decide an administrative appeal. *See* 38 U.S.C. § 7102(a). Nevertheless, there is an appearance of unfairness when an appellant is not notified of such assignment and is not offered a hearing before all members of the assigned panel.

11

appeal. Here, where Mr. Arneson's credibility is a key factor in assessing his continuity-of-symptoms argument, his inability to personally testify before *all* his factfinders may have significantly affected the outcome of his claim.[3] *See Anderson* and *Caluza*, both *supra*; *cf. Sanders*, 129 S. Ct. at 1708 (finding prejudice not demonstrated when appellant did not explain, and Court could not discern, how error could have made a difference in outcome).

As to the Secretary's first argument, although a majority of the Board panel was present at a hearing and only a majority is needed for a binding decision, the Secretary fails to understand that the Board panel is not three individual members making decisions. As with other factfinders across American jurisprudence, the interaction and deliberation between Board members in making decisions is essential to the collective judgment rendered. *Cf. United States v. Resko*, 3 F.3d 684, 689 (3d Cir. 1993) ("[T]he jury system is meant to involve decisionmaking as a collective, deliberative process."); *United States v. Allen*, 736 F.Supp. 914, 917 (N.D. Ill. 1990) ("The viability of the jury as a decision making body is dependent upon the interaction of individuals in a collective process.").

With regard to the Secretary's second argument, although the Board found Mr. Arneson's testimony "credible," it also found the lapses in time between service and his first medical treatment "particularly significant" and "weigh[ing] against his claim." R. at 16-18. As Mr. Arneson argues, if the Board found his testimony concerning the continuity of his symptoms credible, such lapses in time would not weigh against his claim. The Board also stated that Mr. Arneson's statements were "not competent medical evidence." R. at 17. This is true. But if the Board found his testimony credible, Mr. Arneson would not need competent medical evidence to substantiate his claim. *See Savage v. Gober*, 10 Vet.App. 488, 495-96 (1997) (holding that, per 38 C.F.R. § 3.303(b), medical evidence of nexus is not required for benefits if the veteran demonstrates continuity of symptoms between his present disability and service); *see also Davidson v. Shinseki*, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (vacating this Court's decision that "stated categorically that 'a valid medical opinion' was required to establish nexus, and that [a layperson] was 'not competent' to provide testimony as to nexus"). Finding Mr. Arneson's testimony credible and yet assigning it little weight could very well

---

[3] We note that, under the Federal Rules of Civil Procedure, judges substituted mid-proceeding into "a hearing or non-jury trial . . . must, at a party's request, recall any witness whose testimony is material." FED. R. CIV. P. 63.

reflect the fact that the credibility assessment was based, in part, on second-hand conveyance or record review, as opposed to personal assessment. Regardless, because the Board's statement is unclear as to whether it found Mr. Arneson's testimony concerning the continuity of his symptoms credible, the Secretary's second argument is without merit.

We cannot say how a hearing before all Board members assigned to adjudicate his appeal would have affected the Board's determinations on credibility, probative weight, and ultimately Mr. Arneson's claim. However, we find that the assignment of Board member Sullivan to decide Mr. Arneson's administrative appeal, without providing an opportunity for a hearing, deprived Mr. Arneson of an opportunity to meaningfully participate in the processing of his claim in a way that could have altered the Board's credibility determinations. Therefore, Mr. Arneson has demonstrated that the error prejudiced his claim. *See Sanders*, *supra*; *Overton v. Nicholson*, 20 Vet.App. 427, 435 (2006) (finding that any error depriving a claimant of "a meaningful opportunity to participate effectively in the processing of his or her claim . . . must be considered prejudicial"). Remand is warranted for the Board to afford Mr. Arneson the opportunity for a hearing in front of all his decisionmakers. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

## F. Mr. Arneson's Remaining Arguments

Because the matters of plantar fasciitis and a knee disability are being remanded, the majority of Mr. Arneson's remaining assertions – that the Board erred in its duty to assist, probative value, and credibility determinations – are rendered moot. *See Dunn v. West*, 11 Vet.App. 462, 467 (1998) (remand of claim under one theory moots the remaining theories advanced on appeal). With regard to benefits for hallux valgus, the parties agree – and the record reflects – that Mr. Arneson's original claim for benefits for a foot condition reasonably included a claim for benefits for hallux valgus. *See Clemons v. Shinseki*, 23 Vet.App. 1, 5 (2009) ("[T]he claimant's intent in filing a claim is paramount to construing its breadth."). Thus, remand is warranted. *Tucker*, *supra*.

## G. Remand

On remand, Mr. Arneson is free to submit additional evidence and argument on the remanded matters, and the Board is required to consider any such relevant evidence and argument. *See Kay*

*v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to benefit sought); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court has held that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). The Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by the Court).

### IV. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the November 20, 2008, Board decision denying service connection for plantar fasciitis and knee disability is VACATED. Those matters, along with the appellant's claim for entitlement to service connection for hallux valgus, are REMANDED for further development and readjudication consistent with this opinion.

KASOLD, *Chief Judge,* concurring in the result:

I agree that a claimant is entitled to the opportunity for a personal hearing in front of the Board member or panel that adjudicates his administrative appeal, but I find this entitlement in the statutes, not the regulation. Although the Secretary argues that his regulations permit the adjudication of an appeal by a Board panel without the opportunity to be heard in front of the entire panel, he fails to recognize that this practice, once authorized by statute, is no longer authorized. *See* Pub. L. No. 103-271. It is axiomatic that a regulation may not contravene a statue. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984) (if "Congress has directly spoken to the precise question at issue . . . that is the end of the matter").

When examining the statutory terms of the relevant provisions in their context and with a view to their place in the overall statutory scheme, it is clear that amendments to title 38 enacted in 1994 fundamentally changed a claimant's right to a hearing. *See Tyler v. Cain*, 533 U.S. 656, 662 (2001); *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("[T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand."); *United States v. Fausto*, 484 U.S. 439,

453 (1988) ("Th[e] classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute.").

Post-1994 section 7102(a) states that a proceeding before the Board may be assigned to one Board member or a panel of at least three Board members. 38 U.S.C. § 7102(a). The assigned Board member or panel "shall make a determination" on the claimant's appeal. *Id.* However, the Board "shall decide [the] appeal only after affording the appellant an opportunity for a hearing." 38 U.S.C. § 7107(b). In this context, this "Board" that affords an opportunity for a hearing reasonably can be construed only as the "Board" that decides the appeal, claimant's assigned Board member or panel. Thus, because a claimant's appeal cannot be adjudicated until he is afforded the opportunity to be heard by the Board assigned to adjudicate his appeal, it follows that the claimant has a right to be heard by the Board member or panel assigned to adjudicate his administrative appeal. As such, altering the assigned members of the Board without subsequently affording the claimant an opportunity to be heard before any newly assigned Board members falls afoul of the legislative scheme.

This conclusion is bolstered by section 7107(e)(2), which explicitly prescribes that a hearing through technology would be "in lieu of hearing held by personally appearing before a Board member or panel." The language employed in this section more specifically evidences Congress's intent – in addition to the general intent taken from the totality of the above cited provisions – that a claimant is entitled to a hearing before the Board member or panel assigned to decide his administrative appeal.

Regardless of the basis of the claimant's right, my colleagues correctly hold that a claimant has a right to notice and an opportunity to be heard upon the post-hearing addition of Board members to an appeal, and Mr. Arneson was deprived of that right. Further, although it cannot be said definitively whether a new hearing will affect the outcome of Mr. Arneson's appeal, my colleagues correctly find that Mr. Arneson has demonstrated prejudice because he was deprived of the opportunity to meaningfully participate in the processing of his claim – i.e., to personally testify in front of all his decisionmakers – in a way that could have altered the Board's credibility determinations. *See Shinseki v. Sanders*, 129 S. Ct. 1696, 1708 (2009) (finding prejudice not

demonstrated when appellant did not explain, and Court could not discern, how error could have made a difference in outcome); *Overton v. Nicholson*, 20 Vet.App. 427, 435 (2006) (any error depriving a claimant of "a meaningful opportunity to participate effectively in the processing of his or her claim . . . must be considered prejudicial").