﻿Citation Nr: 19159003
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 16-04 303
DATE: July 30, 2019

ORDER

An initial rating of 70 percent, and no higher, for posttraumatic stress disorder (PTSD) is granted.

A total disability based on individual unemployability (TDIU) prior to July 7, 2015 is granted.

FINDINGS OF FACT

1. Resolving reasonable doubt in the Veteran’s favor, his PTSD symptoms have caused occupational and social impairment with deficiencies in most areas, but not total occupational and social impairment, since the grant of service connection.

2. Resolving reasonable doubt in the Veteran’s favor, PTSD precluded substantially gainful employment prior to July 7, 2015.

CONCLUSIONS OF LAW

1. The criteria for an initial rating of 70 percent, and no higher, for PTSD have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.159, 4.1, 4.3, 4.7, 4.130, Diagnostic Code (DC) 9411.

2. The criteria for a TDIU prior to July 7, 2015 have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.340, 3.341, 4.1, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from September 1949 to September 1953.

These matters are before the Board of Veterans’ Appeals (Board) on appeal from a July 2015 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO), which granted for service connection for PTSD and assigned an initial 30 percent rating, effective April 25, 2013.

In an October 2015 rating decision, the RO awarded a 50 percent rating, effective July 7, 2015. In a January 2016 rating decision, the RO awarded a 70 percent rating for PTSD and also granted TDIU. Both awards were made effective July 7, 2015. An appeal was perfected from this rating decision. 

The Board has recharacterized the higher rating issue as an initial rating claim. In July 2015, the Veteran filed a claim for a higher PTSD rating and a TDIU, but not a formal notice of disagreement. However, in September 2015 and November 2015, additional relevant evidence, in the form of VA treatment records, a medical opinion, and VA examination report were added to the file. Thus, although the appeal was not perfected from the initial rating decision, the new and material evidence must be considered as filed with the original claim. Accordingly, this appeal is characterized as an initial rating claim. See 38 C.F.R. § 3.156(b); see also Buie v. Shinseki, 24 Vet. App. 242, 252 (2010); Bond v. Shinseki, 659 F.3d 1362, 1368 (Fed. Cir. 2011).

The Board notes that the January 2016 statement of the case listed an issue on appeal as entitlement to an earlier effective date for a higher rating for PTSD. As discussed, a higher rating claim has been pending since the grant of service connection. As the entire rating period is subject to review, the effective date determination is part and parcel of the initial rating for PTSD that is currently on appeal and does not require separate adjudication. See Fenderson v. West, 12 Vet. App. 119, 126 (2001).

In May 2018, the Veteran testified at a videoconference hearing before one of the undersigned Veterans Law Judges (VLJ). Due to technical difficulties at that hearing, a transcript could not be produced. The Veteran therefore testified before a different undersigned VLJ on the same issue in November 2018. A copy of the transcript of the November 2018 hearing is of record. 

Generally, a VLJ who conducts a hearing must participate in making the final determination of the claim involved. 38 U.S.C. § 7107(c); 38 C.F.R. § 20.707. By law, appeals may be assigned only to an individual VLJ or to a panel of not less than three members. 38 U.S.C. § 7102(a). Accordingly, a third VLJ, or in this case, an Acting VLJ, has been assigned to participate in a panel decision for this claim. The Veteran was offered another opportunity to testify before a third VLJ in May 2019 and waived this right in a written correspondence submitted in the same month. See Arneson v. Shinseki, 24 Vet. App. 379 (2011).

1. An initial rating of 70 percent for PTSD, and not higher, is granted.

Disability ratings are determined by applying a schedule of reductions in earning capacity from specific injuries or a combination of injuries that is based upon the average impairment of earning capacities. 38 U.S.C. § 1155. Each disability must be viewed in relation to its entire history, with emphasis upon the limitations proportionate to the severity of the disabling condition. 38 C.F.R. § 4.1. When rating the Veteran’s service-connected disability, the entire medical history must be reviewed. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of the two disability evaluations is applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Where the question for consideration is the propriety of the initial evaluation assigned, evaluation of the medical evidence since the grant of service connection and consideration of the appropriateness of “staged rating” is required. Fenderson v. West, 12 Vet. App. 119, 126 (1999). 

Service connection for PTSD was granted in a July 2015 rating decision. An initial 30 percent rating was assigned effective April 25, 2013, pursuant to 38 C.F.R. § 4.130, DC 9411. As previously noted, the appeal stems from this rating action.

While the appeal was pending, in an October 2015 rating decision, the RO awarded a 50 percent rating, effective July 7, 2015. In a January 2016 rating decision, the RO awarded a 70 percent rating, effective July 7, 2015. The Veteran seeks a higher rating.

Under the General Rating Formula for Mental Disorders, a 70 percent rating is warranted where objective evidence demonstrates occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

The criteria for a 100 percent rating include a non-exhaustive list of symptoms reflective of a total occupational and social impairment. A 100 percent evaluation is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

For the reasons that follow, the Board finds that an initial 70 percent rating is warranted since the grant of service connection. The evidence has not shown the Veteran’s PTSD symptoms result in total occupational and social impairment at any time during the appeal period.

VA treatment records showed that the Veteran first sought mental health treatment in 2012, after a positive PTSD screen. The records from 2013 reflected continuous individual therapy for PTSD, with the Veteran reporting feeling stressed first from taking care of his wife during her cancer treatments and later, depression and grief after her passing in April. He consistently reported chronic sleep impairment due to nightmares from personal trauma experienced during service and was referred to group therapy to help address it. The Veteran also reported some self-medicating by drinking or using cannabis to cope with his nightmares. Other VA treatment records up to August 2014 show continuous individual and group mental health sessions, with the latter focusing on reducing his sleep impairment. 

During the sessions, the clinicians found him to be oriented to person, place, and time. He presented with logical thought content with goal-directed thought processes and normal speech. His mood ranged from okay to alright with congruent or euthymic affect. At times, he was found to have dysphoric or sad moods and intense fear with congruent affect when he was distressed from his nightmares. He had good insight and judgment. The clinicians found no evident psychosis. He consistently denied suicidal and homicidal ideations. There was one mention of past suicidal ideation in mid-August 2014, where he talked of planning suicide when he was 63 years old. With respect to grooming and hygiene, the clinicians differed in observation, where one consistently noted the Veteran had good grooming and hygiene, while the other noted that he had fair grooming and hygiene.

His children, R.R.S., J.S., J.M.S., and M.S., all submitted statements acknowledging the Veteran’s chronic sleep impairment and nightmares. They averred that his career and temperament were affected by the constant insomnia and nightmares. They also mention his ongoing treatment at VA. 

The Veteran asserted that upon separation from service, he did not speak about his personal trauma. His PTSD and nightmares led to self-medicating by drinking, which affected his abilities to maintain employment. There are no other medical records or examinations during this period for the Board to consider.

On August 25, 2014, his treating VA psychologist submitted a letter noting that the Veteran had been under her care since September 2012. He was seen for PTSD and related nightmares, as well as for depression secondary to chronicity of nightmares and bereavement of his wife. The psychologist noted that the Veteran experienced a worsening of depression and continued to struggle with trauma-related nightmares due to service; he has had decades-long struggle with disrupted sleep and nightmares.

In March 2015, J.S.L., who served with the Veteran, asserted that he witnessed military personnel harassing the Veteran, but did not discuss his current symptoms.

At a September 2015 VA examination, a VA examiner reviewed the VA medical treatment records and conducted a clinical evaluation. The Veteran reported that his nightmares began during service and have continued since. If he experienced reminders of his trauma, then he would have nightmares. He felt less anxiety now when waking up from his nightmares compared to before, but still wakes up frightened. He denied anger problems and had no problem with authority. He still had significant psychological and physiological distress when reminded about the military. His family knows to make noise if he is not aware of their presence, and he has to see what is going on around him. The Veteran becomes depressed, anxious, and agitated when he does not sleep well. He performed daily living activities and stayed mostly at home. He also had little motivation to care for the perennial flowers that his wife liked and reported losing ambition in life around four or five years ago. He lived life for his children now. The examiner found that he had depressed mood, anxiety, chronic sleep impairment, mild memory loss, flattened affect, and disturbances of motivation and mood. The Veteran’s mood was depressed and was tearful when discussing his military-related traumas, with full-range affect. The examiner found that he had sharp cognition, and his thought process was logical and linear. He denied having delusions or hallucinations. The Veteran’s thought content was devoid of homicidal and suicidal ideation. The examiner determined that the Veteran’s overall level of occupational and social impairment was best summarized as ‘occupational and social impairment with deficiencies in most areas.’

In November 2015, his VA treating psychologist submitted another letter concurring with the VA examiner’s assessment that the Veteran had occupational and social impairment in most areas.

In that same month, L.A. submitted a letter asserting that the Veteran had trouble focusing and handling stress situations. He could not hold a job, as he was often agitated and unfocused. The Veteran also submitted a statement asserting that during the time his wife passed, his nightmares became worse and more frequent. He talked about passing with her, but she wanted him to stay with their children.

VA treatment records during this period showed that the Veteran reported feeling lonely, sad, and lost, but put on an act around his family. He hosted holiday parties and found holidays difficult, as his wife had a lot of very special traditions. He also attended family gatherings during football season. During time with his family, he reported an increase in alcohol consumption and cannabis use. The clinician found that he maintained good grooming and hygiene. He had normal speech with linear thought process and appropriate thought content. He was oriented to person, place, and time. The Veteran reported intermittent resurges in nightmares with strong grief responses during this period. He lacked motivation. His mood was found to be mixed or sad with congruent affect. The clinician noted that he had intrusive thoughts or flashbacks, continuous poor sleep, and anxiety.

At the hearing before one of the undersigned VLJs, the Veteran asserted that his PTSD symptoms manifested through nightmares from his trauma incurred in service. He self-medicated by drinking to help with the nightmares and could not hold a job. He averred previously feeling suicidal back then, but not now. See Hearing transcript, 5. The Veteran reported having relationships with his children and enjoyed time with his grandchildren. He visited with his daughter and youngest granddaughter all the time and socialized with his friends. The Veteran volunteered at a food pantry on a weekly basis. See Hearing Transcript 7-9.

After careful review of the record, the Board resolves doubt in the Veteran’s favor and finds that his symptoms have more closely approximated the symptoms associated with a 70 percent rating since the grant of service connection. 

In reaching this conclusion, the Board has reviewed the treatment records throughout the appeal and the 2014 and 2015 assessments from the VA examiner and the Veteran’s treating psychologist. Both clinicians determined that the Veteran’s PTSD symptoms, primarily his severe and chronic sleep impairment, trauma-related nightmares, mood disturbances, depression, and decreased motivation have resulted in occupational and social impairment with deficiencies in most areas. The VA examiner’s assessment was based in part on the examination and interview completed in September 2015. However, it is significant to note that he appears to have based his overall assessment upon a longitudinal review of the Veteran’s clinical history as shown in his VA treatment records; these are the only records identified as having been reviewed. The Veteran’s VA treating psychologist appears to have based his assessment upon the Veteran’s clinical presentation throughout his course of treatment since 2012. Neither clinician appears to have been describing the Veteran’s level of impairment solely as it existed during an isolated point in time. Indeed, the Veteran’s treating psychologist noted in his 2014 opinion that the Veteran’s symptoms have been present for decades. The Board also notes that the symptoms the clinicians described in support of their overall assessment of ‘deficiencies in most areas’ have been present throughout the course of this appeal as exhibited by the VA treatment records and the Veteran’s lay statements. The clinician’s opinions reflect that the Veteran’s chronic sleep impairment due to constant trauma-related nightmares significantly affected his mood, and resulted in depression, anxiety, and lack of motivation, thereby causing deficiencies in most areas. Further, the VA examiner opined that the Veteran would likely have difficulty if he returned to work, coping with stress and general functioning, due to his inability to get sufficient sleep at night and his difficulty with motivation which is due to PTSD. 

Resolving all reasonable doubt in the Veteran’s favor, his PTSD symptoms have caused deficiencies in most areas, which satisfies the criteria for a 70 percent rating. The Board further finds that the Veteran’s PTSD symptoms have not caused the level of impairment required for a disability rating of 100 percent at any time during the appeal period.

A total rating is not warranted because the Veteran’s PTSD symptoms has not shown gross impairment as those contemplated by a 100 percent rating. 

The Veteran has been able to maintain a good relationship with his family, despite a decrease in mood and motivation. He was able to host holiday parties and attended family gatherings. He was oriented to person, time, and place. Speech was within normal limits. He had fair to good hygiene and grooming. The 2015 VA examiner and treating psychologist both found that his symptoms caused occupational and social impairment in most areas, at worst. At the hearing, he reported frequent visits by his children and grandchildren, volunteering at a food pantry on a weekly basis, and socializing with friends. He has not shown to experience gross impairment in thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, or intermittent inability to perform activities of daily living at any time. 

The Veteran has not exhibited symptoms such as neglect of personal appearance, depression affecting the ability to function independently, or suicidal/homicidal ideation. The Veteran has always been oriented to person, time, and place. He has consistently appeared at appointments appropriately groomed and has been able to maintain fair to good hygiene. The Board has considered his statement regarding past suicidal ideation when he was 63 years old. However, this is one instance that happened in the past and not during the current period before the Board. He has maintained family relations by letting them know that he is receiving VA treatment. He has exhibited logical and goal-oriented thought processes, normal speech, and good insight and judgment. 

In short, the preponderance of the evidence weighs against finding that the severity, frequency, and duration of the Veteran’s symptoms resulted in the level of impairment required for a 100 percent rating. Accordingly, an initial rating of 70 percent, and no higher, is assigned for the appeal period prior to July 7, 2015. A rating in excess of 70 percent is denied for the entire appeal, that is, since the grant of service connection. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3. There are no additional expressly or reasonably raised issues presented on the record.

2. Entitlement to a TDIU prior to July 7, 2015.

The Veteran is already in receipt of a TDIU, effective July 7, 2015. The issue of entitlement to a TDIU prior to July 7, 2015 is before the Board pursuant to Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). 

Total disability ratings for compensation may be assigned when a veteran is unable to secure and follow a substantially gainful occupation. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16. If the schedular rating is less than total, a total disability evaluation can be assigned based on individual unemployability if the Veteran is unable to secure or follow a substantially gainful occupation as a result of service connected disability provided that if there is only one such disability, this disability shall be ratable at 60 percent or more. 38 C.F.R. § 4.16(a). 

The central inquiry is “whether the Veteran’s service-connected disabilities alone are of sufficient severity to produce unemployability.” Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the Veteran’s level of education, special training, and previous work experience when arriving at this conclusion; factors such as age or impairment caused by non-service connected disabilities are not to be considered. 38 C.F.R. §§ 3.341, 4.16, 4.19.

The Veteran’s only service-connected disability is PTSD. Considering the grant of a higher 70 percent rating for PTSD, the Veteran now meets the schedular criteria for an award of a TDIU since April 25, 2013; the grant of service connection for PTSD. His combined rating is now 70 percent from April 25, 2013. 38 C.F.R. § 4.16(a).

On his VA Form 21-8940, the Veteran indicated his service-connected PTSD rendered him unemployable. He last worked at a home daycare with his wife from 1999 to 2010. He reported that he applied for a position as a field representative for the United States Census Bureau in December 2011. He completed one year of college.

At the September 2015 VA examination, he reported working in electronics, mostly in television sales and service. He installed some computers and started various companies but could not keep them going. The examiner found that he would likely have difficulty returning to work because of stress and general functioning due to his inability to get sufficient sleep at night. The Veteran also had difficulties with motivation due to PTSD, which would impact his ability to work.

In November 2015, his VA treating psychologist opined that he would be unable to maintain employment due to the frequency and severity of his PTSD-related nightmares, and their impact on his sleep quality, duration, and mood. She found that his work history supported this finding. L.A. asserted that the Veteran had trouble focusing and handling stress situations. He could not hold a job, as he was often agitated and unfocused.

VA treatment records showed chronic sleep impairment due to his nightmares, which affected his mood. The Veteran submitted income statements indicating intermittent earnings during the appeal period. At the hearing before one of the undersigned, he averred that he has not been able to keep a job due to his nightmares and self-medicating efforts. See Hearing Transcript, 9-10.

Based on the cumulative and compelling evidence, and resolving reasonable doubt in favor of the Veteran, the Board finds it is reasonably likely that the Veteran would be precluded from obtaining and maintaining gainful employment that is consistent with his education and prior work history due to the combined effect of his service-connected PTSD symptoms.

Both the VA examiner and his treating psychologist found that he would have difficulties maintaining substantially gainful employment due to his PTSD. They found that his inability to consistently obtain sound or restful sleep would significantly affect his ability to function and cope with stress in the workplace. These clinicians have determined that his PTSD symptoms cause such significant impairment that he would not be able to maintain substantially gainful employment because of them, and each clinician has provided generally sufficient rationale in support of their opinions. The Board has also carefully considered the statements submitted by L.A. and the Veteran’s expressing his overall difficulties due to his PTSD. 

Given the entirety of the evidence of record, and resolving reasonable doubt in his favor, TDIU is warranted based on the overall impact from the Veteran’s service-connected PTSD. 38 U.S.C. § 5107; 38 C.F.R. §3.102.

 

 

S. BUSH

Veterans Law Judge

Board of Veterans’ Appeals

 

 

REBECCA N. POULSON

Acting Veterans Law Judge

Board of Veterans’ Appeals

 

 

D. JOHNSON

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD M. Tang, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.