http://www.va.gov/vetapp16/Files5/1639915.txt

Citation Nr: 1639915 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 15-23 050 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia

THE ISSUE

Entitlement to an evaluation in excess of 30 percent for bilateral pes planus. 

REPRESENTATION

Appellant represented by: Military Order of the Purple Heart of the U.S.A.

ATTORNEY FOR THE BOARD

H. Hoeft, Counsel

INTRODUCTION

The Veteran had active service from February 1942 to October 1945. 

This matter comes before the Board of Veterans' Appeals (BVA or Board) from a May 2015 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia. A notice of disagreement was received in May 2015, a statement of the case was issued in June 2015, and a statement from the Veteran was accepted in lieu of a VA Form 9 in June 2015.

This matter was previously before the Board in December 2015, at which time it was remanded for further development of the record. 

The issue of entitlement to a bilateral knee disability as secondary to service-connected bilateral pes planus has been raised by the record in a January 2016 letter. This issue is referred to the Agency of Original Jurisdiction (AOJ) for appropriate action. 38 C.F.R. § 19.9 (b) (2015).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDINGS OF FACT

Throughout the appeal period, the Veteran's bilateral pes planus has been manifested by objective findings of bilateral foot pain, severe fallen arches, extreme tenderness of the plantar surfaces, and marked pronation not relieved by arch supports.

CONCLUSION OF LAW

Affording the Veteran the benefit of the doubt, the criteria for a disability rating of 50 percent for bilateral pes planus are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Code 5276 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

Notice and Assistance

The Veterans Claims Assistance Act of 2000 (VCA) imposes on VA to provide notice of how to substantiate a claim and to assist in evidentiary development. VA's duty to notify was satisfied by letters of October 2014 and May 2015. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

Duty to Assist

The Veteran's service treatment records (STRs) are on file, as are private and VA treatment records. The Veteran declined to testify in support of his claim. A VA examination has been performed adequate for the Board to make a fully informed decision on the claim. See 38 C.F.R. §§ 3.159 (c)(4), 3.326(a); see also Monzingo v Shinseki, 26 Vet. App. 97, 107 (2012); D'Aries v. Peake, 22 Vet. App. 97, 104 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 

In light of the above, the Veteran has had a meaningful opportunity to participate effectively in the processing of this claim, and no prejudicial error has been committed in discharging VA's duties to notify and assist. See Shinseki v. Sanders, 556 U.S. 396, 407, 410 (2009); Conway v. Principi, 353 F.3d 1369, 1374 (Fed. Cir. 2004); Arneson v. Shinseki, 24 Vet. App. 379, 389 (2011). 

The Board finds that there has been substantial compliance with its remand directives, including development for additional records. See Stegall v. West, 11 Vet. App. 268, 271 (1998); see also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008).

As there is neither an indication that the Veteran was unaware of what was needed for claim substantiation nor any indication of the existence of additional evidence for claim substantiation, the Board concludes that there has been full VCAA compliance. Newhouse v. Nicholson, 497 F.3d 1298, 1302 (Fed.Cir. 2007) ("There is a presumption that [VA] considered all of the evidence of record," and the mere failure by the board to discuss a particular piece of evidence is insufficient to rebut that presumption).

Increased Ratings, Generally 

Disability ratings are assigned in accordance with VA's Schedule for Rating Disabilities and are intended to represent the average impairment of earning capacity resulting from disability. See 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321 (a), 4.1 (2015). Separate diagnostic codes (DCs) identify the various disabilities. See generally 38 C.F.R. Part 4 (2015). If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Reasonable doubt regarding the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3. 

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). When, as here, the Veteran is requesting an increased rating for an established service-connected disability, the present disability level is the primary concern and past medical reports do not take precedence over current findings. See Francisco v. Brown, 7 Vet. App. 55 (1994). 

Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. See Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in the following decision is therefore undertaken with consideration of the possibility that different "staged" ratings may be warranted for different time periods.

Bilateral Pes Planus

The Veteran asserts that the symptoms associated with his bilateral pes planus disability, currently rated as 30 percent disabling, are more commensurate with a 50 percent rating under Diagnostic Code (DC) 5276. See May 2016 Statement from Accredited Representative; see also May and June 2015 Statements from Veteran. 

Under DC 5276, severe symptoms (objective evidence of marked deformity, pain on manipulation and use accentuated, indication of swelling on use with characteristic callosities) are rated 30 percent bilaterally. Pronounced pes planus (marked pronation, extreme tenderness, marked inward displacement and severe spasm of the tendo achillis on manipulation, symptoms not improved with orthopedic shoes or appliances) warrants a 50 percent rating bilaterally. Id., DC 5257. 

The Veteran underwent a VA foot (DBQ) examination in May 2015. At that time, he reported that his pes planus condition had worsened over time and that he could hardly walk 100 yards. Objectively, there was pain on use of the feet; pain on manipulation of the feet; characteristic calluses; use of orthotics; and decreased longitudinal arch height of both feet on weight-bearing. There was pain in both feet on examination, including pain on weight-bearing. The Veteran used a cane and a walker. 

In his May 2015 Notice of Disagreement, the Veteran took issue with the adequacy of the May 2015 VA examination. He reported balance problem that required the use of a cane or walker depending on severity of his foot pain. 

In a January 2016 letter, a VA podiatrist stated that the Veteran had been experiencing significantly increasing discomfort in arches to his feet over the last 2 years, along with worsening rotation of his ankles and associated knee pain. (Note: service connection is currently in effect for right and left ankle conditions, as secondary to pes planus; the issue of service connection for a knee disability as secondary to pes planus is being referred to the RO herein, as noted in the introduction above). Upon examination, the arches were severely collapsed upon weight-bearing, with pain upon palpation along the medial arches. 

Private treatment records dated from 2014 to 2016 document treatment for routine nail/foot care. 

The Veteran submitted a Foot DBQ completed by his private podiatrist in May 2016. Pertinent diagnoses included arthritis, bilateral pes planus, bilateral hallux rigidus, and bilateral plantar fasciitis. The Veteran endorsed pain in his feet when standing and walking. Objectively, there was marked pronation of both feet; pain on use of feet; pain on manipulation of the feet, accentuated on manipulation; extreme tenderness of plantar surfaces on both feet; decreased longitudinal arch height of both feet on weight-bearing; marked deformity of both feet (i.e., pronated stance); and inward bowing of the Achilles tendon. The physician noted that hallux rigidus exacerbated the pes planus. It was further noted that the Veteran used orthotics but that they did not alleviate the pain or pes planus condition. 

In this case, affording the Veteran the benefit of the doubt, the Board finds that the criteria for 50 percent rating have been met throughout the appeal period. Indeed, the evidence reflects that the Veteran's bilateral pes planus is manifested by marked pronation in both feet, not improved by orthopedic shoes (May 2016 DBQ); extreme tenderness in both feet over the plantar surfaces (May 2016 DBQ); and severely collapsed arches (January 2016 examination). While the May 2015 VA examination revealed no evidence of marked inward displacement and severe spasm of the tendo Achilles on manipulation - i.e., other symptomology listed under the 50 percent rating criteria - there is no requirement that the Veteran exhibit all criteria to receive the higher rating. Further, as noted, the Veteran has challenged the adequacy of this examination, claiming, in part, that it was not as comprehensive as the May 2016 DBQ completed by his private podiatrist. The Board agrees and finds the May 2016 DBQ to be more reflective of the Veteran's foot symptoms throughout the course of this appeal.

Thus, resolving reasonable the doubt in favor of the Veteran, the Board finds that his pes planus more nearly approximates the criteria for a higher 50 percent rating under Diagnostic Code 5276 throughout the rating period on appeal. In evaluating the Veteran's disability, the Board has considered, along with the schedular criteria, the Veteran's functional limitations associated with pes planus, to include as due to pain, swelling, weakness, stiffness, fatigability, and lack of endurance in granting the higher 50 percent rating under Diagnostic Code 5276. See DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. §§ 4.3, 4.7, 4.71a. 

The Veteran has now been awarded the maximum schedular rating under DC 5276 for the entire rating period on appeal. 

A separate or higher rating is not warranted under any other diagnostic code. The Veteran has not been diagnosed with weak foot (DC 5277), claw foot or pes cavus (DC 5278), metatarsalgia, anterior (Morton's disease) (DC 5279), hallux valgus (DC 5279), hammer toe (DC 5282), or malunion or nonunion of the tarsal or metatarsal bones (DC 5283); moreover, none of these DCs provide for ratings in excess of 50 percent. See 38 C.F.R. § 4.71a. The May 2016 DBQ examination report showed diagnoses of bilateral hallux rigidus and plantar fasciitis; however, these conditions are not currently service connected, nor have they been found to be manifestations of his service-connected pes planus. Therefore, hallux rigidus and plantar fasciitis are not encompassed by this appeal. 

Importantly, the evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other. Esteban v. Brown, 6 Vet. App. 259, 262 (1994); 38 C.F.R. § 4.14. (Emphasis added). 

Even assuming, arguendo, that Veteran's plantar fasciitis and hallux rigidus were found to be related to the service-connected pes planus disability, the predominate symptomatology associated with these conditions - according to the May 2016 examiner - is marked pronation and tenderness/pain to the plantar surfaces of the feet, which largely overlaps with the symptoms contemplated by DC 5276 for pes planus. Accordingly, a separate rating for hallux rigidus or plantar fasciitis is not warranted here. 

Similarly, a separate rating for arthritis of the feet is not for application here because the pain and limited motion in the feet is already compensated for in the assignment of the 50 percent rating for the flat feet. See Esteban, supra. 

Finally, the Court has recently held that Diagnostic Code 5284, which provides for evaluation of foot injury, is not a "catch-all provision" for rating foot disorders, particularly where there are specifically designated rating criteria for the particular foot disorder. See Yancy v. McDonald, 27 Vet. App. 484, 492-93 (2016);see also 38 C.F.R. § 4.14 (The evaluation of the same disability under various diagnoses is to be avoided.). As Diagnostic Code 5276 specifically applies to pes planus, evaluation under Diagnostic Code 5284 is inappropriate. 

The record does not suggest that any other diagnostic code is applicable here, as the Veteran's disability- pes planus - is specifically rated and contemplated under Diagnostic Code 5276.

Extraschedular Consideration 

As to consideration of referral for an extraschedular rating, such consideration requires a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating criteria adequately contemplate disability picture. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. If the schedular evaluation does not contemplate the level of disability and symptomatology and is found inadequate, then the second inquiry is whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as governing norms, i.e., marked interference with employment and frequent hospitalization. If the disability picture meets the second inquiry, then the third step is to refer the case to the Under Secretary for Benefits or the Director of Compensation Service to determine whether an extraschedular rating is warranted. 

Here, a comparison of the Veteran's pes planus with the schedular criteria does not show "such an exceptional or unusual disability picture . . . as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321 (b). Specifically, his pes planus has been manifested by deformity, including with regard to pronation, alteration of the weight-bearing line, pain including on manipulation and use, flattened arches, callosities, and extreme tenderness of the plantar surfaces, with no relief from the use of orthotics. These manifestations are contemplated under DC 5276 (flatfoot, acquired), and under sections 4.40 and 4.45 of the regulations, which contemplate functional impairment due to factors such as pain, stiffness, aching, deformity, weakness, instability, fatigability, incoordination, swelling, and deformity of the joint, including on repeated use and during flare-ups. See 38 C.F.R. § 4.71a; see also DeLuca, 8 Vet. App. at 206-07. 

Even if the Board were to find that the schedular criteria did not reasonably describe the Veteran's disability picture, extraschedular referral would still not be warranted. The evidence does not suggest, and the Veteran did not contend, that his foot disorder causes marked absence from work or results in hospitalizations. 38 C.F.R. § 3.321 (b)(1). Thus, even if his disability picture were exceptional or unusual, referral would not be warranted.

Based on the foregoing, the Board finds that the schedular criteria adequately describe the Veteran's pes planus disorder. 38 C.F.R. § 4.71a. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. Therefore, referral for consideration of an extraschedular evaluation is not warranted. See Thun, supra.

Finally in this regard, in Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014), the Federal Circuit held that "[t]he plain language of § 3.321(b)(1) provides for referral for extra-schedular consideration based on the collective impact of multiple disabilities." Here, however, the issue has not been argued by the Veteran or reasonably raised by the evidence of record. The Veteran has not asserted, and the evidence of record does not suggest, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. Yancy v. McDonald, 27 Vet. App. 484, 495 (Fed. Cir. 2016) ("the Board is required to address whether referral for extraschedular consideration is warranted for a veteran's disabilities on a collective basis only when that issue is argued by the claimant or reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities"). The Board will therefore not address the issue further.

Thus, the Board finds the schedular rating criteria contemplate the Veteran's symptoms of bilateral pes planus and has determined that referral of the case for extraschedular consideration pursuant to 38 C.F.R. §3.321 (b) (1) is not warranted.

TDIU

The Board notes that in Rice v. Shinseki, the United States Court of Appeals for Veterans Claims (Court) held that entitlement to a total disability rating based on individual unemployability (TDIU) claim cannot be considered separate and apart from an increased rating claim. See Rice v. Shinseki, 22 Vet. App. 447 (2009). In this case, the Veteran has not raised a claim for TDIU and the evidence does not indicate that he is unemployable due to his service-connected bilateral pes planus. Accordingly, the Board finds that Rice is not applicable in this case.

 (CONTINUED ON NEXT PAGE)

ORDER

Entitlement to a disability rating of 50 percent for bilateral pes planus is granted, subject to the regulations applicable to the payment of monetary benefits.

____________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs