# United States Court of Appeals for the Federal Circuit

---

**CARMEN RIVERA**
**(SUBSTITUTED FOR ROBERTO V. ORTIZ),**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2010-7097

---

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 06-932, Judge Alan G. Lance, Sr.

---

Decided: August 19, 2011

---

OMAR A. KHAN, Wilmer Cutler Pickering Hale and Dorr, LLP, of New York, New York, argued for claimant-appellant. Of counsel were ADRIEL I. CEPEDA DERIEUX, CLARION JOHNSON and SAVERINO MERCADANTE. Of counsel on the brief were MARGARET C. BARTLEY and E. CARSON LANGE, National Veterans Legal Services Program, of Washington, DC.

MARTIN F. HOCKEY, JR., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General, and MARTIN S. SENDEK, Attorney, United States Department of Veterans Affairs, of Washington, DC.

MARK R. LIPPMAN, The Veterans Law Group, of La Jolla, California, for amicus curiae The Federal Circuit Bar Association.

_____

Before BRYSON, DYK, and O'MALLEY, *Circuit Judges.*

BRYSON, *Circuit Judge.*

I

Appellant Carmen Rivera is the widow of Army veteran Roberto V. Ortiz. In December of 1971, Mr. Ortiz filed a claim for benefits for a service-connected disability that he characterized as a "nervous condition" and "recurrent headaches." After obtaining a psychiatric evaluation, the Veterans Administration regional office rejected Mr. Ortiz's claim in 1972. The regional office concluded that his "nervous condition" was not service connected and stated that a "personality disorder" is "not a disability under the law." Mr. Ortiz did not appeal that determination, and that decision became final.

In 1979, Mr. Ortiz sought to reopen his disallowed claim. He supported his request with a psychiatric evaluation made by a private physician. When the re-

gional office refused to reopen his 1971 claim, Mr. Ortiz filed a notice of disagreement. The regional office provided him with a statement of the case, which identified the single issue in the case as the "sufficiency of evidence to reopen claim for service connection for nervous condition" and stated that the 1979 psychiatric evaluation was insufficient to warrant reopening because it was "solely cumulative or repetitious in character" to the evidence already in the record and therefore was not new and material evidence that would justify reopening the 1971 claim.

Mr. Ortiz took steps to appeal that decision to the Board of Veterans' Appeals. At the outset, there was some confusion regarding what documents Mr. Ortiz had submitted in support of his appeal. In March of 1980, Mr. Ortiz wrote to the agency asking about the status of his appeal of his request for service connection for his nervous condition. The following month, the regional office sent Mr. Ortiz a letter instructing him that if he wished to "reactivate [his] appeal," he should submit a copy of VA Form 1-9, a standard agency form that includes instructions and questions that are relevant to perfecting an appeal to the Board. Mr. Ortiz responded by letter in May of that same year. He explained that he had already sent the agency a completed copy of VA Form 1-9:

> I just received a letter on 23 April of 1980, relative to my claim of the case, for the compensation for my nervous condition. The form was sent out in November of 1979, from here, the Veterans at Ponce. . . . Please search the records because no action has yet been taken. I hope that you can make an evaluation, since I do not see any reason why you would not want to do it, since I have all the rights. I was 8 years waiting. I hope you will

give me an appointment since I feel very sick and the treatment at Mayaguez consists only of pills and nothing else.

The regional office again sent Mr. Ortiz a letter instructing him to file VA Form 1-9. That letter, dated June of 1980, advised Mr. Ortiz that no further action would be taken on his appeal unless he submitted the completed form within 30 days. Mr. Ortiz did not respond to that letter, and the Board did not take any further steps to address his appeal.

In 1994, Mr. Ortiz again sought to reopen his claim. This time, following lengthy proceedings, the regional office granted him service connection for a bipolar disorder with an effective date of July 8, 1994. Mr. Ortiz disputed the assigned effective date; he contended that the effective date for his benefits should be 1979, because the Board had improperly failed to process his 1979 appeal, which he contended was still pending in appellate status. *See Adams v. Shinseki*, 568 F.3d 956, 960 (Fed. Cir. 2009). In a 2005 decision the Board adjusted his effective date slightly, but rejected his "pending claim" argument on the ground that he had failed to file a VA Form 1-9 or its equivalent, setting out allegations of error of fact or law, within one year of the regional office's September 1979 decision.

Mr. Ortiz appealed the Board's decision to the Court of Appeals for Veterans Claims ("the Veterans Court"). In a single-judge decision dated July 28, 2008, the court concluded that Mr. Ortiz's submissions "did no more than identify his claim," i.e., his request for service-connected disability benefits, and therefore did not satisfy the statutory requirement that he identify particular factual or legal errors in the regional office's decision.

On rehearing *en banc*, the Veterans Court upheld the Board's decision by a divided vote. Analyzing the statute that sets forth the procedures governing appeals to the Board, the court noted that since its enactment in 1962, the statute has required a claimant's formal appeal to "set out specific allegations of error of fact or law, such allegations related to the specific items in the statement of the case." 38 U.S.C. § 7105(d)(3). The court explained that the veteran's substantive appeal must expand upon his initial statement of disagreement with the regional office's decision and set forth, "however inartfully—a particular theory of error for the Board to decide." The court stated that although Mr. Ortiz's 1980 letter had identified his claim of service connection for a nervous condition and had made clear that he "was contesting whether new and material evidence had been submitted to reopen the prior denial of that claim," that was not sufficient. Because Mr. Ortiz's letter had "asserted no reason or theory why the [statement of the case] was incorrect" and had "failed to even state a rough or inarticulate allegation of error," the court concluded that the Board had properly treated the 1979 appeal as having been abandoned.

The dissenting judges noted that Mr. Ortiz's letters were sent to the agency "shortly after he received the [statement of the case] that addressed only one issue—the failure, as determined by the [regional office] to submit new and material evidence—making it readily understandable what Mr. Ortiz was contesting." In the view of the dissenting judges, Mr. Ortiz's act of "simply appealing the [regional office's] determination that he had not submitted new and material evidence is sufficient issue identification" for his administrative appeal.

Mr. Ortiz died while the case was pending before the Veterans Court. Following the entry of judgment in the

Veterans Court, Ms. Rivera moved to be substituted on her husband's claim. Because the time for filing an appeal was approaching, she filed a notice of appeal to this court before the Veterans Court had acted on her motion. The Veterans Court then denied the motion on the ground that the notice of appeal had transferred exclusive jurisdiction over the matter to this court. Ms. Rivera argues that the notice of appeal did not divest the Veterans Court of authority to enter an order substituting her on her husband's claim, but in the alternative, she moved this court to hold that she should be substituted on Mr. Ortiz's claim. We granted Ms. Rivera's motion without prejudice to the government's right to object to the substitution, but the government has raised no objection to the substitution order in its brief.

## II

The statute governing appeals to the Board of Veterans' Appeals that was in effect in 1980, 38 U.S.C. § 4005(d)(3) (1980), is nearly identical to the statute that is in force today, although it has been recodified as 38 U.S.C. § 7105(d)(3). The statute stated then, and states now, that the claimant's appeal "should set out specific allegations of error of fact or law, such allegations related to specific items in the statement of the case." It adds that the Board "may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed." 38 U.S.C. § 4005(d)(5) (1976), now codified as 38 U.S.C. § 7105(d)(5).

The appeal process requires a claimant to make two filings in response to a decision by a regional office with which the claimant disagrees. First, the claimant must file a notice of disagreement, which need only express a "desire for review" of the regional office's decision. 38

C.F.R. § 19.113 (1980). In response, the regional office prepares a "statement of the case" explaining its decision on the claim. To trigger review by the Board, the claimant is required to file an appeal, identifying the error or errors committed by the regional office.

The Veterans Court acknowledged that the Department of Veterans Affairs ("DVA"), both at the time of Mr. Ortiz's 1980 appeal and now, has operated under a duty to read the documents that a claimant files in support of his appeal liberally and sympathetically in deciding if the claimant has sufficiently alleged an error of fact or law. 38 C.F.R. § 19.116 (1980) (obligation to construe filing liberally); *see Comer v. Peake*, 552 F.3d 1362, 1368 (Fed. Cir. 2009) (same, under current regulation). Moreover, we have held that the Board is required to address all issues reasonably raised on appeal, even if the issue might not be directly raised in the veteran's appellate filings when read in isolation. *Robinson v. Shinseki*, 557 F.3d 1355, 1361 (Fed. Cir. 2009); *Comer*, 552 F.3d at 1368 (DVA obliged to consider entitlement to TDIU benefits, even when not specifically raised in the formal appeal, if the record contains "persuasive and pervasive evidence" of unemployability).

While acknowledging the liberal standard that is to be applied to the construction of veterans' submissions, the Veterans Court interpreted section 7105(d)(3) to require an appellant to present "a particular theory of error for the Board to decide" and to "explain why the [statement of the case] was in error." Mr. Ortiz's 1980 letter to the agency failed to satisfy that standard, according to the Veterans Court, because "it does not dispute any finding of fact made by the [regional office]" and merely reflects his dissatisfaction with the decision against him.

The Veterans Court based its construction of section 7105(d)(3) in significant part on its understanding of the legislative history leading to the enactment of that provision. The court noted that in 1962, Congress enacted the law that "required [the] VA for the first time to fully explain its decisions through a new procedure called the Statement of the Case." Act of Sept. 19, 1962, Pub. L. No. 87-666, 76 Stat. 553 (1962). The court added that the Act "balanced this new disclosure rule with a requirement that claimants respond to the [statement of the case] with a Substantive Appeal that must clearly identify the benefits sought and 'should set out specific allegations of error of fact or law . . . .'"

In fact, the requirement that claimants set out specific allegations of error in their substantive appeals was not adopted to balance the agency's obligation to issue a statement of the case, but was of much earlier vintage. In 1933, Congress authorized the President to create what is now the Board of Veterans' Appeals. Independent Offices Appropriation Act, 1934, Pub. L. No. 73-78, 48 Stat. 283, 309 (1933). The Board was created later that same year by executive order. Exec. Order No. 6230, pt. 2, § 1 (1933). Language similar to the language at issue in this case first appeared in that 1933 order: "Each application for review on appeal should contain specific assignments of the alleged mistake of fact or error of law in the adjudication of said claim, and any application for review on appeal insufficient in this respect may be dismissed." *Id.* § 7. But it was not until 1962 that Congress required the regional office to prepare the statement of the case. The statement of the case was intended to summarize the evidence, identify the applicable law, and explain the reasons for the regional office's decision. 76 Stat. at 553. Congress believed that veterans often lacked the information necessary to pursue an appeal to the Board, and it

intended the statement of the case to assist the veterans in framing their further submissions and the Board in resolving appeals. *See* S. Rep. No. 87-1843, at 2 (1962) ("This bill will place the veteran or his survivor in a better position to develop new evidence available and to fully prepare and present his appeal. Moreover, the issue should be more clearly delineated which should facilitate appellate procedures in many cases.").

Accordingly, before 1962 veterans were required to identify specific errors of fact or law for the Board to review, even though they did not have the benefit of the agency's statement of the case explaining the reason for the regional office's decision. Because the pleading requirement was neither imposed for the first time nor amended as part of the 1962 legislation, it appears that Congress did not intend to "balance" the obligations of the agency and the obligations of the claimant by requiring the veteran to offer, as the Veterans Court stated, "a particular theory of error." To the contrary, with the statement of the case procedure in place, the Board could identify the issues on appeal with reference to the statement of the case and did not have to rely exclusively on the veteran's appeal to frame the issues.

Section 7105(d)(3) does not prescribe a particular format for the veteran's appeal or a particular degree of specificity that must be provided. If the regional office addresses, for example, multiple claims in the same decision, it may be reasonable to expect the veteran to specify the particular denied claim that he seeks to appeal. On the other hand, less specificity is necessary when the regional office's decision turns on only a single issue and the nature of the claimed error with respect to that issue is obvious from the decision itself. In fact, when the regional office decides only one issue and refer-

ences only one issue in the statement of the case, the veteran's expression of a desire to appeal from the regional office's decision effectively identifies the issue to be decided by the Board.

In its 1979 decision, the regional office decided a single issue: that Mr. Ortiz's newly submitted evidence was not sufficient to warrant reopening his previously disallowed claim. The statement of the case identified the sole issue as the "sufficiency of the evidence to reopen claim for service connection for nervous condition," and it explained the regional office's decision simply by saying that Mr. Ortiz's evidence was "solely cumulative or repetitious in character" and failed to establish that his nervous condition was incurred or aggravated in service. In such a case, in which the sole issue on appeal is the factual question of the sufficiency of the veteran's evidence to reopen his claim, all that is required is that the veteran make clear that he disagrees with the regional office's conclusion that he failed to offer new and material evidence.

The Veterans Court acknowledged that Mr. Ortiz's 1980 correspondence made it clear that he was "contesting whether new and material evidence had been submitted to reopen the prior denial of that claim." The court also stated that it would have been sufficient if Mr. Ortiz had stated in his appeal "that the [regional office] erred in its interpretation of the new evidence it discussed." Comparing what the court regarded Mr. Ortiz to have made clear in his correspondence and what the court considered to be necessary to satisfy the statutory standard, it appears that the court interpreted the statute to require an explicit statement of what was conveyed by clear implication in his correspondence. In light of the Board's obligations to read veterans' submissions liberally

and to consider the full context within which those submissions are made, we conclude that section 7105(d)(3) does not impose such a requirement, at least in the context of a case involving the single factual question of the sufficiency of the veteran's evidence to reopen a claim.

Under these circumstances, since there was only a single issue identified in the statement of the case, Mr. Ortiz's 1980 letters to the Veterans Administration were sufficient to identify the issue on appeal and to satisfy the statutory standard. Where, as in this case, the underlying facts are undisputed, it is within our jurisdiction to decide the ultimate legal question, i.e., whether Mr. Ortiz adequately identified the error he wished the Board to correct. *See Szemraj v. Principi*, 357 F.3d 1370, 1375 (Fed. Cir. 2004).

Costs to Ms. Rivera.

**REVERSED**