NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WOODROW DIGGS,**
*Claimant-Appellant*

**v.**

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2016-2243

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-2017, Judge Alan G. Lance, Sr.

---

Decided: July 14, 2017

---

JOHN F. CAMERON, Montgomery, AL, argued for claimant-appellant.

REBECCA SARAH KRUSER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by TANYA KOENIG, BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., SCOTT D. AUSTIN; CHRISTINA LYNN GREGG, Y. KEN LEE, Office of General Counsel,

United States Department of Veterans Affairs, Washington, DC.

———————————

Before MOORE, O'MALLEY, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

Woodrow Diggs appeals a decision of the Court of Appeals for Veterans Claims. Mr. Diggs argues that the Veterans Court erred by applying an improper legal standard in concluding that Mr. Diggs had not filed a substantive appeal. Because the Veterans Court applied the correct legal standard, we *affirm*.

BACKGROUND

1. Mr. Diggs' Military Service

In June 1970, Mr. Diggs entered active duty military service. In July 1970, Mr. Diggs was admitted to the U.S. Army Hospital, Fort Polk, Louisiana for psychiatric evaluation. J.A. 76–79. The treating physician diagnosed Mr. Diggs with schizophrenia and neutropenia.[1]

During his hospitalization, Mr. Diggs told a military psychiatrist, Dr. Ulmer, that he had shot a drill instructor. J.A. 77. Although he apparently believed he had shot his instructor, he had not. J.A. 104. Dr. Ulmer's notes reflect that Mr. Diggs provided a history that he "claims to both hear and see devil [for] 1½ years." J.A. 77. Subsequent treatment notes reflect that Mr. Diggs stated that he had been convicted of grand larceny at 13, suspended or expelled from school three times, and was fired from about eight different jobs. J.A. 77.

———————————

[1] Neutropenia is an abnormally low concentration of neutrophils (a type of white blood cell) in the blood. Petitioner's neutropenia diagnosis is not at issue on appeal.

In November 1970, Mr. Diggs was discharged from the army after a Medical Evaluation Board found that he was unfit for further military service. J.A. 3, 148.

Following his discharge, Mr. Diggs was hospitalized multiple times for psychiatric problems. During a 1972 hospitalization at the VA Medical Center in Miami, Dr. Wainer noted that Mr. Diggs was hospitalized "while on active duty, after shooting his drill [sergeant] because he was continuously bugging him. It was most probable that at that time, he had an acute psychotic break." J.A. 225. During a 1973 hospitalization at the same facility, Dr. Herrero noted that Mr. Diggs had "a history of a psychotic break while in active duty and also has a history of use of different hallucinogenic drugs." J.A. 236. During his incarceration in 1976, Dr. Parado noted that Mr. Diggs stated that he "has been hearing voices since he was in the U.S. Army." J.A. 329.

### 2. Mr. Diggs' Veterans Claims

Immediately following his discharge, Mr. Diggs filed a series of claims for disability seeking service connection for schizophrenia. All of the claims were denied. His repeated requests for reconsideration were also denied. In 1978, the Board of Veterans Appeals denied Mr. Diggs' appeal for service connection. The Board found that despite the usual presumption of soundness for veterans, given the detailed clinical history in this case, Mr. Diggs' schizophrenia "clearly and unmistakably predated his service induction." J.A. 649. The Board also found no "aggravation of the condition in issue." *Id.* The Board found that there was "no persuasive evidence that there was an advance in the basic underlying psychopathology during his period of active duty"; rather, it saw the evidence as reflecting only continuance during service of Mr. Diggs' preservice psychiatric problems, including hallucinations. *Id.* The Board also found that "any change in

his condition was within the limits of normal progression of the preservice defect." *Id.*

From 1978 to 1995, Mr. Diggs repeatedly requested to reopen his claim for service connection. Each request was denied for failure to furnish new and material evidence. Following a claim he made in 1994, Mr. Diggs filed a timely Notice of Disagreement ("NOD"). On November 3, 1994, in response to the NOD, the Regional Office issued its Statement of the Case ("SOC"), continuing its denial of service connection because Mr. Diggs' claim was "not supported by the official service medical records nor is there evidence of treatment for a nervous condition while the veteran was in service." J.A. 1515–20.

On March 3, 1995, a VA employee wrote a Field Examination Report for fiduciary purposes concerning who should be the payee of Mr. Diggs' VA pension benefits. J.A. 1538–41. That document also included a statement, under the "Entitlement To Other Benefits" section, that "[t]he veteran does not appear to be in need of either aid and attendance or housebound benefits. He has no VA life insurance. He is aware of medical benefits. *He has filed a claim for service connection regarding his mental disorder.*" J.A. 1539 (emphasis added). Another Field Examination Report in May 1995 considered Mr. Diggs' capacity to manage funds and concluded that Mr. Diggs' VA benefits should continue to be sent to his wife. J.A. 1542–46. The report also stated, in the "Entitlement To Benefits" section, that "[t]he veteran also mentioned to me *that he has a claim pending* for service-connection for his mental condition and his claim is presently in the Veterans Court of Appeals." J.A. 1545 (emphasis added).

In November 1997, Mr. Diggs again requested to reopen his claim for service connection. J.A. 4. The Regional Office denied service connection in July 1999, but on appeal, the Board sought a medical opinion regarding whether Mr. Diggs' condition worsened during service.

On May 8, 2003, Mr. Diggs received a medical examination from the VA, and the VA subsequently granted Mr. Diggs service connection in 2004. J.A. 1923–28; 1994–98. Mr. Diggs' service connection for schizophrenia was granted effective the date of his 1997 claim.

Mr. Diggs challenged that 1997 effective date both on direct appeal, and through an assertion of clear and unmistakable error ("CUE") in the 1978 board decision.[2] On direct appeal, Mr. Diggs argued that he was entitled to an earlier date because he had earlier claims for service connection that remained unadjudicated. J.A. 3176. Specifically, Mr. Diggs argued that his March 1995 statement to the VA as recorded in the VA examiner's report constituted a timely substantive appeal of the November 1994 SOC. This argument was rejected by the Board in an April 17, 2014 decision, finding that the report did not indicate disagreement with any VA decision or contain any of the information contemplated by 38 U.S.C. § 7105(d)(3). J.A. 21. Mr. Diggs appealed to the Veterans Court, which affirmed the Board's decision. The Veterans Court held "that the Board properly found that the March 1995 report does not meet the criteria to be construed as a Substantive Appeal, as it does not reflect any disagreement with or desire to appeal the November 1994 SOC." J.A. 8 (citing *Gibson v. Peake*, 22 Vet. App. 11, 15 (2007); 38 U.S.C. § 7105(d)(3); 38 C.F.R. § 20.202). This appeal followed.

## DISCUSSION

### 1. Standard of Review and Jurisdiction

This court may review a Veterans Court decision "with respect to the validity of a decision of the Court on a rule of law or of any statute or regulation." 38 U.S.C.

---

[2] Mr. Diggs has withdrawn his CUE argument and therefore it is no longer at issue for this appeal.

§ 7292(a). This court may not, however, "review the Veterans Court's factual findings or its application of law to facts absent a constitutional issue." *Singleton v. Shinseki*, 659 F.3d 1332, 1334 (Fed. Cir. 2011) (citations omitted).

In reviewing a Veterans Court decision, this court may decide "all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1). This court "reviews de novo statutory and regulatory interpretations relied upon by the Veterans Court." *Mayfield v. Nicholson*, 499 F.3d 1317, 1321 (Fed. Cir. 2007).

As a preliminary matter, the government contends that we must dismiss this appeal for lack of jurisdiction. The Secretary argues we lack jurisdiction to hear the appeal because the appeal is not directed to a question of law, but rather to application of law to facts. We disagree. Both parties agree that the facts are undisputed. Mr. Diggs argues on appeal that the Veterans Court failed to apply the controlling rule of law in *Rivera v. Shinseki*, 654 F.3d 1377 (Fed. Cir. 2011), and applied an improper legal standard in adopting the Board's four-corners test. These questions concern whether the correct rule of law was applied and invoke questions of law that are reviewable by this court. *Willsey v. Peake*, 535 F.3d 1368, 1372 (Fed. Cir. 2008). This court, therefore, has jurisdiction to review the Veterans Court decision raised in this appeal.

## 2. Applicability of *Rivera v. Shinseki*

A core issue that was before the Veterans Court concerns a March 1995 report prepared by a VA field examiner. J.A. 7, 1538–41. Mr. Diggs did not file it himself, and it merely notes that Mr. Diggs "has filed a claim for service connection regarding his mental disorder." J.A. 1539. The record also shows a second VA field examination report from May 1995, which states that "the veteran also mentioned to [the examiner] that he has a claim

pending for service-connection for his mental condition and his claim is presently in the Veterans Court of Appeals." J.A. 1545.

Mr. Diggs argued that the March 1995 report constituted an appeal of the November 1994 SOC. The Veterans Court disagreed, holding "that the Board properly found that the March 1995 report does not meet the criteria to be construed as a Substantive Appeal, as it does not reflect any disagreement with or desire to appeal the November 1994 SOC." J.A. 8 (citing *Gibson v. Peake*, 22 Vet. App. 11, 15 (2007); 38 U.S.C. § 7105(d)(3); 38 C.F.R. § 20.202). Specifically, the Veterans Court noted the Board's finding that the March 1995 report does not contain any of the information contemplated by 38 U.S.C. § 7105(d)(3). J.A. 7. That subsection states:

> The claimant will be afforded a period of sixty days from the date the statement of the case is mailed to file the formal appeal. This may be extended for a reasonable period on request for good cause shown. The appeal should set out specific allegations of error of fact or law, such allegations related to specific items in the statement of the case. The benefits sought on appeal must be clearly identified.

38 U.S.C. § 7105(d)(3).

On appeal, Mr. Diggs argues that the Veterans Court failed to apply the controlling rule of law in *Rivera v. Shinseki*, 654 F.3d 1377 (Fed. Cir. 2011). In *Rivera*, we held that "Section 7105(d)(3) does not prescribe a particular format for the veteran's appeal or a particular degree of specificity that must be provided." *Id*. at 1381. "[L]ess specificity is necessary when the regional office's decision turns on only a single issue and the nature of the claimed error with respect to that issue is obvious from the decision itself." *Id*. "In fact, when the regional office decides only one issue and references only one issue in the state-

ment of the case, the veteran's expression of a desire to appeal from the regional office's decision effectively identifies the issue to be decided by the Board." *Id.*

Mr. Diggs argues that his statements to the VA examiner expressed a desire to appeal, and that those statements under *Rivera* were sufficient to constitute an expression to appeal. Mr. Diggs argues that the Veterans Court erred when it relied on *Gibson*, rather than *Rivera*. We disagree. The Veterans Court cited *Gibson* for the correct legal proposition that to qualify as an appeal, the veteran's statement must reflect disagreement. 22 Vet. App. at 15. Although *Rivera* holds that "the veteran's expression of a desire to appeal from the regional office's decision" might itself be a sufficient appeal in some cases, 654 F.3d at 1381, the Board found that the March 1995 report "does not reflect any disagreement with or desire to appeal the November 1994 SOC." J.A. 8. The Veterans Court affirmed the Board's conclusion that "[t]here is no indication of disagreement with any VA decision contained within the report." J.A. 8, 21. The Veterans Court, therefore, did not need to address *Rivera*.

Mr. Diggs argues that in reaching this conclusion, the Board and the Veterans Court improperly confined their analysis and consideration to the four corners of Mr. Diggs' March 1995 document and ignored all other documents in his claims file.

Mr. Diggs notes that 38 C.F.R. § 20.202 requires the Board to read filings by claimants in a liberal manner. Mr. Diggs also cites *Douglas v. Derwinski*, 2 Vet. App. 435, 439 (1992), which found that the Board's review is not limited to the four corners of a Form 1-9 substantive appeal, and that the Board must consider all the evidence of record.

In this case, however, there was no appeal filed in 1995. Mr. Diggs did not make any sort of filing in 1995, and the oral statements he did make did not include a

request for an appeal. There is no requirement that the Board interpret filings liberally where no filings were made. *Douglas* does not apply in this case because the claimant in *Douglas* had actually filed an appeal.

We find that the Veterans Court did not err in refusing to apply a "four-corners" test. We affirm the Veterans Court's decision.

### 3. Notice to Mr. Diggs

Finally, Mr. Diggs argues that the Board failed to provide him notice of the inadequacy of his 1995 "appeal" as required under 38 C.F.R. § 20.203 (1994). The Veterans Court did not address this issue in its opinion as it was never raised by Mr. Diggs.

Notwithstanding, the Veterans Court found there was no substantive appeal filed and, as such, it did not need to reach the issue of whether the Board should have provided notice of that nonexistent appeal's inadequacy. Therefore, Mr. Diggs' argument that the Board failed to provide him notice is unpersuasive.

### CONCLUSION

Because the Veterans Court applied the correct rule of law, we *affirm* the Veterans Court's decision.

### AFFIRMED

### COSTS

No costs.