# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-7244

LARRY D. EDWARDS, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 21, 2022                     Decided March 20, 2023)

*Glenn R. Bergmann,* with whom *Bryan Andersen, Joshua Leach*, and *Thomas M. Polseno*, all of Bethesda, Maryland, were on the brief, for the appellant.

*Alex L. Kutrolli*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Selket N. Cottle*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and TOTH and LAURER, *Judges*.

BARTLEY, *Chief Judge*: Since implementation of the Veterans Appeals Improvement and Modernization Act of 2017 (AMA) in February 2019, VA claimants may appeal to the Board of Veterans' Appeals (Board) by filing a Notice of Disagreement (NOD) using VA Form 10182 and electing one of three Board review dockets. *See* Pub. L. 115-55, 131 Stat. at 115, § 2(x); 38 C.F.R. § 20.202(b) (2022). Where the Board cannot identify which review option was intended, the Board is to request clarification of the claimant's intent. 38 C.F.R. § 20.202(f). This appeal was referred to a panel of this Court, with oral argument,[1] to address the circumstances under which VA is required to clarify intent. Specifically, whether § 20.202(f) applies when a claimant elects the direct review docket but attaches evidence to the form, indicating the election of a different Board review docket.

In the August 5, 2020, decision on appeal, which we have jurisdiction to review pursuant to 38 U.S.C. §§ 7252(a) and 7266(a), the Board denied veteran Larry D. Edwards service

---

[1] Oral argument was held at the University of Iowa College of Law in Iowa City, Iowa. The Court thanks the law school for its hospitality and thanks counsel for traveling to Iowa for the argument. *See Edwards v. McDonough*, No. 20-7244, Oral Argument (hereinafter Oral Argument], *available at* https://www.youtube.com/watch?v= HbY8NNneR7U.

connection for a cervical spine injury. Record (R.) at 5-9. Because the Board did so without first clarifying the Board review docket the veteran intended to choose, as required by § 20.202(f), the Court will set aside the August 2020 Board decision and remand the matter for further development and readjudication consistent with this decision.

## I. AMA BOARD REVIEW OPTIONS AND VA FORM 10182

Before discussing the factual background and arguments relevant to this appeal, the Court provides an overview of the AMA appeals process, including VA Form 10182, the NOD form at issue in this case.

Under the AMA, a claimant who receives an adverse initial decision by the agency of original jurisdiction (AOJ) has three options to pursue administrative review, including the option to file an NOD to appeal the decision directly to the Board. *See* 38 U.S.C. §§ 5104B, 5104C(a), 5108; *Andrews v. McDonough*, 34 Vet.App. 151, 157 (2021). When choosing to appeal directly to the Board, a claimant must select one of three Board dockets: the direct review docket, the additional evidence docket, or the hearing docket. 38 U.S.C. § 7105(b)(3); *see Aviles-Rivera v. McDonough*, 35 Vet.App. 268, 273 (2022); *Andrews*, 34 Vet.App. at 157. Each review docket has different decision-making schedules and unique rules related to the submission of evidence and testimony. Under the direct review docket, the Board reviews the record that was before the AOJ at the time of its decision, without considering new evidence and without holding a hearing; under the additional evidence docket, the Board reviews any additional evidence that was submitted with the NOD form and evidence submitted within 90 days following receipt of the NOD, but does not hold a hearing; under the hearing docket, the Board will hold a hearing and will consider additional evidence submitted at the hearing or within 90 days following the hearing. *See generally* 38 U.S.C. §§ 7105(b)(3)(A)-(C), 7113 (a)-(c); 38 C.F.R. § 20.202(b)(1)-(3).

Under the AMA, an NOD must, among other things, "be properly completed on a form prescribed by the Secretary," 38 C.F.R. § 20.202(a). A claimant elects a Board docket by filing VA Form 10182, titled "Decision Review Request: Board Appeal." 87 Fed. Reg. 4718 (Jan. 28, 2022). Part II of VA Form 10182 requires a claimant to choose one of the three Board review dockets and provides an overview of each, summarizing the evidentiary rules for each option and the relative processing speed of each docket. *See* R. at 22. Subsections A. and B. of Part III of the form provide space for the claimant to identify the specific issue or issues to be appealed and the

2

date of the decision being appealed, and Part III C. allows the claimant to indicate whether "additional sheets" are attached to the form. *See, e.g.*, R. at 22. [2]

## II. FACTUAL BACKGROUND

Mr. Edwards served honorably on active duty in the U.S. Army from May 1974 to May 1977. R. at 525. In September 2019, during a VA primary care visit, he was diagnosed with degenerative disc disease of the cervical spine. R. at 87. The provider noted that cervical x-ray reports revealed severe changes at C6-C7 and ordered an MRI for further evaluation of the cervical spine. *Id.* That same month, Mr. Edwards filed a claim for service connection for a cervical spine (neck) injury. R. at 156-61. He reported that, during service, he was in a military police vehicle involved in an accident with an Army truck, and he attributed his neck injury to that collision. R. at 158.

During an October 2019 VA neurology consultation, Mr. Edwards reported chronic neck pain since approximately 1975. R. at 82. In November 2019, a VA examiner diagnosed cervical strain and degenerative arthritis of the spine. R. at 49. The veteran related his condition to an injury sustained in a head-on vehicle collision during service and asserted that he experienced soreness, aching, sharp pain, and limited range of motion at that time. R. at 50. He reported receiving chiropractic treatment and managing his pain with ice and over-the-counter medications. *Id.* The examiner opined that the veteran's condition was less likely than not related to service because there were "no records from 1974 to 1976 during his service time to indicate that he had complained [of] neck pain" and no evidence of neck complaints at separation. R. at 45. The examiner also indicated, apparently referring to symptoms, that there was a "lack of continuum," and no evidence that the veteran actively sought medical treatment for a chronic neck condition for over 40 years, and that these facts didn't support that the condition was chronic. *Id.* The examiner concluded that the severe degenerative changes documented in x-ray imaging were consistent with aging and normal wear and tear. *Id.*

The RO denied service connection in November 2019. R. at 38-40. Mr. Edwards timely filed VA Form 10182 and in Part II elected the direct Board review docket. R. at 22. In Part III, he

---

[2] Since the time that Mr. Edwards filed VA Form 10182, VA has made minimal revisions to the form, none pertinent to our decision today. *See VA Form 10182*, available at https://www.va.gov/vaforms/va/pdf/VA10182.pdf (last accessed Feb. 24, 2023).

marked the box indicating that he was attaching additional sheets. *Id*. To that end, he included with the form a statement that he had injured his neck in an accident at Fort Knox between 1975 and 1976. R. at 20. He described details of the accident, including that he had been a passenger in a military police car driving at a high rate of speed in responding to a training range incident when the car collided with a 2 ½ ton military vehicle at the top of a hill. *Id*. He identified a staff sergeant by name and rank as the driver of the military police car and recounted that he had mentioned several times to the staff sergeant that he was in pain after the accident. *Id*. Mr. Edwards indicated that it was his understanding that the staff sergeant had been held responsible for damages to the military police car. R. at 21. He asserted that he sought treatment for his neck and back with a chiropractor whom he had seen "over 100 times throughout the years" and that a VA physician, Dr. Ortiz, advised him that "the injury appears to be very old due to the amount of arthritis that has formed around the injured area." R. at 20-21. Finally, Mr. Edwards requested that VA reconsider the decision that was made on his injury and locate the Fort Knox accident file. R. at 21.

On November 22, 2019, the Board issued a notice of docketing, informing the veteran that "[b]ased on the Board appeal option you selected on the [NOD], your appeal has been placed on the Direct Review docket." R. at 18. Mr. Edwards subsequently submitted a written brief presentation to the Board. R. at 12-13. In the statement of the issues section he stated, "This is an AMA appeal for direct review by the Board of Veteran [sic] Appeals resulting from submission of VA Form 10182 on 11/18/2019. This appeal originates from rating decision of 11/09/2019." R. at 12. There was no substantive argument submitted. R. at 12-13.

In August 2020, the Board issued the decision on appeal, R. at 5-9, indicating that it had limited its review to the evidence considered by the RO in November 2019, R. at 6. Still, the Board included the veteran's November 2019 statement, which post-dated the RO decision and was attached to his VA Form 10182, in its recitation of evidence. R. at 8. The Board concluded that the evidence showed a current cervical spine disability but that the reported in-service motor vehicle accident was "not reflected in the assembled documents from that time." R. at 9. The Board found that the veteran "is in a position to recall his accidents and his symptoms afterward," but that it was significant that on the separation medical history form he did not complain of ongoing neck problems. *Id*. The Board asserted that Mr. Edwards's failure to complain of neck problems at separation "argues against continuity between events in service and the current disorders," as did the years between his service and the current findings, and the VA examiner's November 2019

4

opinion. *Id*. Concluding that the greater weight of persuasive evidence was against continuity between the reported in-service accident and the veteran's current cervical spine disorders, the Board denied service connection. *Id*. This appeal followed.

### III. PARTIES' ARGUMENTS

Mr. Edwards argues that when his VA Form 10182 and attached statement are liberally read together, a reasonable uncertainty arises as to whether VA could identify which Board review option he intended to elect. Appellant's Brief (Br.) at 9-12; Oral Argument at 4:12-4:28. He contends that VA was required to contact him and clarify his election in accordance with § 20.202(f) before deciding his appeal. Appellant's Br. at 9; Oral Argument at 9:49-10:08.

The Secretary argues that the Board was not required to seek clarification of Mr. Edwards's NOD under § 20.202(f) because the NOD was clear on its face. Oral Argument at 26:16-26:28. The Secretary asserts that the Board properly notified Mr. Edwards, one year prior to its decision, that it had placed his appeal in the direct review docket based on his NOD and provided him with meaningful opportunities to change his Board review election; specifically, the veteran had one year to modify his NOD by submitting a new NOD. Secretary's Br. at 15-23 (citing 38 C.F.R. § 20.202(c)(2)). The Secretary cites the brief submitted by the veteran to the Board, which explicitly stated "This is an AMA appeal for direct review," as further evidence that the veteran had adequate notice of which Board review option he had selected. Secretary's Br. at 18 (citing R. at 12). The Secretary additionally argues that any error by the Board in construing the NOD was harmless because the Board considered the additional evidence provided in Mr. Edwards's attached statement. Secretary's Br. at 23-30 (citing 38 U.S.C. § 7261(b)(2)) (requiring the Court to "take due account of the rule of prejudicial error").

### IV. OBLIGATION TO CLARIFY INTENT OF NOD

A. Whether 38 C.F.R. § 20.202(f) Applies in Mr. Edwards's Case

To determine the circumstances in which § 20.202(f) applies, and whether it applies here, we begin, de novo, with the language of the regulation, the plain meaning of which can be derived from its text and structure. *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993); *Petitti v. McDonald*, 27 Vet.App. 415, 422-23 (2015). "If the plain meaning of the regulation is clear

from its language, that meaning controls and that is the end of the matter." *Frost v. Shulkin*, 29 Vet.App. 131, 137 (2017); *see Brown v. Gardner*, 513 U.S. 115, 120 (1994).

Section 20.202(f) is titled "Unclear Notice of Disagreement" and states in relevant part that if the Board receives an NOD completed on the form prescribed by the Secretary—in this case, VA Form 10182—but cannot identify which denied issue or issues the claimant wants to appeal, or which Board review option the claimant intended to select, "then the Board will contact the claimant to request clarification of the claimant's intent." 38 C.F.R. § 20.202(f). The Secretary primarily asserts that § 20.202(f) is not applicable in Mr. Edwards's case because, since he checked the box for direct Board review, the Board was readily able to identify the veteran's intended choice.

To discern the parameters of the regulation, we begin with its title, which refers to "unclear" NODs. *See Burton v. Shinseki*, 25 Vet.App. 1, 4 (2011) (citing *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("Section headings are tools available for the resolution of a doubt about the meaning of a statute" or regulation); *see also DeLuca v. Brown*, 8 Vet.App 202, 207 (1995) (examining "the title of the regulation" to determine its scope). The adjective "unclear" is defined as "confused or uncertain in statement or understanding." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY, https://unabridged.merriam-webster.com/unabridged/unclear (last visited Dec. 9, 2022) (hereinafter WEBSTER'S).

Moving beyond the title, the text of the regulation specifies that it applies in two situations—where the Board is unable to identify which denied issue or issues the claimant wants to appeal,[3] a concern not at issue here, and where the Board is unable to discern which Board review option the claimant intends to select. In this respect the regulatory language is plain, and clearly mandates that in the second situation, VA "*will* contact the claimant to request clarification of the claimant's intent." 38 C.F.R. § 20.202(f) (emphasis added); *see United States v. UPS Customhouse Brokerage, Inc.*, 575 F.3d 1376, 1382 (Fed. Cir. 2009) ("'Will' is a mandatory term, not a discretionary one."); *Emerson v. McDonald*, 28 Vet.App. 200, 208 (2016) (citing *Stewart v. Brown*, 10 Vet.App. 15, 18 (1997).

---

[3] The Court addressed this first situation in *Evans v. Shinseki,* analyzing a pre-AMA regulation, 38 C.F.R. § 20.101(d) (2001), that concerned Board procedures when determining its own jurisdiction. 25 Vet.App. 7 (2011). The Court concluded that the Board was not permitted to dismiss some appeal issues without first affording the veteran the benefit of § 20.101(d) procedures. *Id*. at 14-15. We discuss *Evans* in greater detail later in this decision.

The Court agrees with Mr. Edwards that, when read together, his VA Form 10182 docket election and its attached statement were unclear—if not wholly contradictory—concerning the docket choice that Mr. Edwards intended, and the Board was required to clarify his intent. Mr. Edwards elected the direct review docket, with the printed restriction that the veteran agrees that he "will not submit any additional evidence in support of [his] appeal." R. at 22. Simultaneously, Mr. Edwards attached a statement to his form that provided new information regarding the circumstances of his in-service accident, his symptoms, and the medical care he sought and received to treat those symptoms. *See* R. at 21. Despite the Secretary's protestations to the contrary, it is simply not possible to reconcile Mr. Edwards's submission of this new evidence with his chosen election. Indeed, it is perfectly clear to the Court that Mr. Edwards's scenario gave rise to the exact type of confusion or uncertainty suggested in the regulation's title. *Compare* 38 U.S.C. § 20.202(f) *with* WEBSTER'S.

At oral argument, the Secretary sought to draw a distinction between the veteran's VA Form 10182 and his attached statement. Oral Argument at 31:38-32:16. The Secretary contended that Form 10182 should be read separately from any attached document and argued that because Mr. Edwards checked one of the three Board review options on the form, no clarification was required. *Id*. The Secretary further cautioned that the requirement that VA clarify a claimant's Board review election could be burdensome. To that end, he described a recent, unrelated case where the claimant submitted a VA Form 10182 electing the direct review Board option and then later submitted over 8,000 pages of evidence that he seemingly expected would be considered in coordination with his earlier-completed VA Form 10182. Oral Argument at 51:41-53:15. The Secretary argued that to require clarification in that case and in Mr. Edwards's case would be contrary to the purpose of the AMA. *Id.* Turning back to the facts of this case, the Secretary then rejected the contention that Mr. Edwards's attached statement created ambiguity, arguing that it did not provide "in clear terms" a request for a Board hearing nor did it reference the submission of additional evidence. Oral Argument at 54:10-54:22. The Secretary suggests that such words or actions, had they been taken in Mr. Edwards's case, would have resulted in the type of confusion that would require the Board to obtain clarification. *Id.*

The Secretary's arguments are unavailing. First, the Secretary's VA Form 10182 explicitly contemplates inclusion of contemporaneous attachments, such as the one submitted by Mr. Edwards. Not only that, the Board is obligated "to consider the full context within which [veterans']

7

submissions are made." *Rivera v. Shinseki*, 654 F.3d 1377, 1382 (Fed. Cir. 2011). This inquiry is guided by the "statutory and regulatory regime that Congress created to protect veterans," *Collaro v. West*, 136 F.3d 1304, 1308 (Fed. Cir. 1998), including VA's duty to liberally construe the filings of pro se claimants, *see Rivera*, 654 F.3d at 1380 (acknowledging that VA has a "duty to read the documents that a claimant files in support of his [or her] appeal liberally and sympathetically").

Second, the Secretary's narrow view of the term "unclear" runs counter to the broad language of the regulation and the dictionary definition of "unclear." The regulatory language is not circumscribed or limited to any particular situation, but broadly refers to situations in which the Board "cannot identify . . . which option the claimant intends to select." 38 C.F.R. § 20.202(f). The parameters that the Secretary proposes, that there is no need to clarify intent where a claimant elects one of the three options listed, is noticeably absent from the regulatory language. Indeed, when the Secretary in August 2018 proposed adding 38 C.F.R. § 20.202, he characterized the new AMA regulation as "closely aligned with the process for clarifying [NODs] in the legacy system." *VA Claims and Appeals Modernization*, 83 Fed. Reg. 3918, 39,832 (Aug. 10, 2018) (proposed rule). For legacy claims, VA had required that claimants identify the specific determinations with which they disagreed; where a claimant submitted an unclear or deficient legacy NOD, the Secretary required contact with the claimant and clarification of the intent. 38 C.F.R. § 20.201 (2019) (Notice of Disagreement); 38 C.F.R. § 19.26 (2019) (Action by agency of original jurisdiction on Notice of Disagreement). Explaining how the new AMA regulation addressing the three new Board review dockets would work, the Secretary did not narrowly limit potential instances of lack of clarity. *See* 38 C.F.R. § 20.202(f). Instead, he explained that § 20.202(f) would apply "when the Board receives a[n NOD] electing more than one evidentiary option, no evidentiary option, *or when it is otherwise unclear* how the appeal should be docketed." 83 Fed. Reg. 3918, 39,832 (emphasis added). The Secretary also explained with regard to § 20.202(f) that "[Board] Veterans Law Judges will retain their discretion to interpret some unclear statements on [NODs] in the light most favorable to the veteran." *Id.* As the Secretary's proposed interpretation is much more constrained than the regulatory language, and narrower than his own characterization in proposing § 20.202(f), the Court finds his argument unconvincing.

Further informing our analysis is that VA reiterated its commitment to veteran-friendly principles when it finalized the language of the AMA. VA stated that it "takes seriously its obligation to administer its [AMA] process in a claimant-friendly way." *VA Claims and Appeals*

8

*Modernization*, 84 Fed. Reg. 138, 139 (Jan. 18, 2019) (final rule). Not only that, in *Evans v. Shinseki*, concerning procedures that apply prior to the Board determining that it has no jurisdiction, the Court observed that "[t]he entire veterans claims adjudication process reflects the clear congressional intent to create an Agency environment in which VA is actually engaged in a continuing dialog with claimants in a paternalistic, collaborative effort to provide every benefit to which the claimant is entitled." 25 Vet.App. at 16. The Court in *Evans* viewed the process as requiring VA "to seek clarification and communicate with the appellant as to any perceived concern about how the appellant had filled out" the legacy NOD. *Id*. at 15.

It is difficult to reconcile the position taken by the Secretary at oral argument in this case, which is that there can be no question about a veteran's intent where he checked a single Board review option on VA Form 10182, with the position the Secretary took when publishing proposed rule 20.202, when he contemplated that the rule would apply in any instance when it is "otherwise unclear how the appeal should be docketed." *Compare* Oral Argument at 27:09-28:30 *with* 83 Fed. Reg. at 39,832. And so, the Court is compelled to conclude, consistent with the language of the regulation, that VA's obligation in the face of confusion or uncertainty regarding the claimant's NOD docket election is to contact the claimant to ensure that they understand the intent of the claimant.

To be clear, we do not speculate as to whether other scenarios might implicate § 20.202(f) and VA's obligation to clarify a claimant's NOD docket election. Accordingly, we do not address the situation where the veteran submits additional statements or evidence after submitting the VA Form 10182, a scenario referenced by the Secretary at oral argument. We need not address these questions because here Mr. Edwards's VA Form 10182 and attached statement were part of the same submission and were explicitly intended to be contemplated together, and his attached statement created uncertainty as to which Board review docket he intended to elect. We conclude only that the § 20.202(f) duty to clarify the veteran's intent attached in this case because the VA Form 10182 submission as a whole, consisting of the form itself and the attached statement, raised uncertainty that the Board did not acknowledge or attempt to resolve consistent with VA regulation. *See Arneson v. Shinseki*, 24 Vet.App. 379, 387 (2011) ("In the claimant-friendly world of veterans benefits, 'the importance of systemic fairness and the appearance of fairness carries great weight.'" (quoting *Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998))). Thus, based on

the plain language of § 20.202(f), the Court concludes that the Board erred in determining that no clarification as to the veteran's election was necessary.

## B. Whether the Board's Error Is Harmless

Although the Board erred, the Court has a duty to consider whether this error prejudiced Mr. Edwards. *See* 38 U.S.C. § 7261(b)(2); *Shinseki v. Sanders*, 556 U.S. 396, 406-07 (2009) (noting that the statute requiring this Court to "take due account of prejudicial error [ ] requires the Veterans Court to apply the same kind of 'harmless error' rules that courts ordinarily apply in civil cases"). The Secretary argues that any error in considering the veteran's appeal in the direct appeal docket rather than the evidence submission docket was harmless because the Board considered the statement attached to VA Form 10182 and adequately explained why Mr. Edwards was not entitled to service connection. Secretary's Br. at 23-30. The Secretary argues that the Board described the statement attached to the NOD and in its analysis it properly discounted lay evidence of an in-service injury or nexus. *Id.* at 24, 27-30. Further, the Secretary contends that Mr. Edwards remains free to file a supplemental claim to have any new evidence considered by the AOJ. Oral Argument at 36:50-37:24. Mr. Edwards argues that the Board failed to mention or analyze the statement in its analysis, creating doubt as to whether the Board weighed the evidence. Reply Br. at 4-5. He further asserts that had he known that the Board would not consider his attached statement, he would have elected a different Board review option that ensured consideration of his statement. Oral Argument at 1:08:41-1:09:05.

The Court cannot conclude that the Board's error was harmless. *See Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004) ("Where the effect of an error on the outcome of a proceeding is unquantifiable, however, we will not speculate as to what the outcome might have been had the error not occurred."); *Arneson*, 24 Vet.App. at 389 (finding prejudice when an error "could have altered" the Board's determinations). The Board adjudicated Mr. Edwards's appeal in the direct review lane rather than the evidence submission lane, despite his submission of new evidence. *See* R. at 6. After reciting the evidence of record, including the newly submitted evidence, the Board found that the favorable evidence in this appeal consisted of the veteran's current cervical spine diagnoses and self-reported in-service accident. R. at 9. The Board did not recite or discuss the veteran's lay statements regarding continuing neck treatment, but found that the weight of the evidence was against continuity between the reported in-service injury and the

veteran's current disabilities, noting the lack of complaints of ongoing neck problems at separation and the November 2019 VA examiner's negative opinion. *Id*.

Contrary to the Secretary's argument that Mr. Edwards received the benefit of the evidence submission lane, it is clear that the Board failed to account for Mr. Edwards's new evidence in its analysis, including his statement that he sought neck and back treatment with a chiropractor and that he had seen the chiropractor "over 100 times throughout the years." R. at 20. *Compare* Secretary's Br. at 23-30 *with* R. at 9.

Although the Board is presumed to have considered all evidence of record when making its decision, *Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007), that presumption does not relieve the Board of its independent obligation to address potentially favorable, material evidence of record and to provide reasons or bases for its weighing of that evidence, *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). Because Mr. Edwards's statement attached to his VA Form 10182 provided, among other things, additional detail regarding treatment sought for his neck disability and potential continuity of symptoms since service, it was potentially favorable, material evidence that the Board was required to address. Consequently, and for the above-described reasons, the Court rejects the Secretary's harmless error argument and concludes that remand is required. *See* 38 U.S.C. § 7261.

### III. *QUIRIN* GUIDANCE CONCERNING THE ADEQUACY OF THE NOVEMBER 2019 VA EXAMINATION

For the sake of guidance to the Board on remand, *see Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009), the Court notes an additional issue that warrants attention. Mr. Edwards argues that the Board clearly erred in deeming the November 2019 VA examination adequate for adjudication purposes. Appellant's Br. at 16-20. The Secretary disputes these contentions. Secretary's Br. at 8-14. The Court agrees with Mr. Edwards.

The November 2019 examiner opined that the veteran's condition was less likely than not related to service because there were "no records from 1974 to 1976 during his service time to indicate that he had complained [of] neck pain," no evidence at separation of complaints of a neck condition, a "lack of continuum" and absence of evidence that the veteran actively sought medical treatment for his chronic neck condition over 40 years, all of which didn't support that the condition was chronic since service. R. at 45. The examiner also opined that the severe degenerative changes

11

documented in x-ray imaging were consistent with aging and normal wear and tear. *Id.* The Board concluded that this medical opinion, among other evidence, supported finding a lack of both chronicity and continuity of the veteran's cervical condition since service, and that the opinion was persuasive evidence against service connection. R. at 9.

However, a review of the veteran's lay statements, including those made to the November 2019 examiner, demonstrates that the veteran sought and received chiropractic neck treatment for many years. *See* R. at 50. Because the November 2019 opinion is erroneously premised on the absence of Mr. Edwards having sought treatment for a neck condition, the examiner's conclusions are flawed. *See Reonal v. Brown*, 5 Vet.App. 458, 460-61 (1993) ("An opinion based upon an inaccurate factual premise has no probative value."). And although the opinion did not rely solely on a lack of contemporaneous medical evidence, it is clear that the examiner "failed to consider whether the lay statements presented sufficient evidence of the etiology of [the veteran's] disability such that his claim of service connection could be proven." *Buchanan v. Nicholson*, 451 F.3d 1131, 1336 (Fed. Cir. 2006). Notably, the Board did not find that the veteran's lay evidence was not credible. *See Miller v. Wilkie*, 32 Vet.App. 249, 260 (2020) (holding that "if credibility of some evidence was a relevant issue for the Board, we would expect some discussion on the matter"). To the extent that the VA examiner failed to consider the veteran's lay statements regarding treatment, the opinion is inadequate. *See Reonal*, 5 Vet.App. at 460-61. Thus, in accepting the November 2019 opinion as probative of a lack of chronicity and continuity post service, and as persuasive evidence against service connection, the Board erred. *See Mitchell v. Shinseki*, 25 Vet.App. 32, 43-45 (2011) (Board reliance on a medical examination amounts to a finding of adequacy of the examination).

Under the AMA, the Board is to remand an appeal to the AOJ for correction of a duty-to-assist error under section 5103A if the error occurred prior to the AOJ's decision on appeal. *See* 38 C.F.R. § 20.802 (2022). Failure to address the issues described above may affect the probative value of any opinion obtained on remand, and the Board is reminded that it cannot otherwise evade its statutory duty to discuss all relevant, favorable evidence of record by relying on a VA medical opinion that fails to account for such evidence. *See Gabrielson v. Brown*, 7 Vet.App. 36, 40 (1994).

Accordingly, the Court concludes that the Board clearly erred in relying on the November 2019 VA opinion to deny the veteran's claim. *See Ardison v. Brown*, 6 Vet.App. 405, 407 (1994) (holding that the Board errs when it relies on an inadequate medical examination or opinion).

Remand is warranted for the Board to obtain an addendum or new opinion containing adequate supporting rationale. *See Barr v. Nicholson*, 21 Vet.App. 303, 311 (2007); *Tucker v. West*, 11 Vet. App. 369, 374 (1998). Since the Court is remanding this case to correct a predecisional duty to assist error by the AOJ, we will not consider Mr. Edwards's duty-to-assist argument alleging that VA failed to obtain additional records relevant to his claim. On remand, the veteran may identify additional records he would like VA to obtain to thoroughly develop and adjudicate his case. *See* 38 U.S.C. § 5103A(f)(2); 38 C.F.R. § 3.159(c) (2022). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the [Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

## IV. CONCLUSION

After considering the parties' briefs, oral argument, the record on appeal, and governing law, the August 5, 2020, Board decision is SET ASIDE, and the matter is REMANDED for further development and readjudication consistent with this decision.